370 F.Supp. 461 (1972)
MOTOR CARRIERS COUNCIL OF ST. LOUIS, INC., a corporation, et al., Plaintiffs,
v.
LOCAL UNION NO. 600, affiliate of International Brotherhood of Teamsters,
Chauffeurs, Warehousemen and Helpers of America, Defendant.
No. 70 C 183(A).
United States District Court, E. D. Missouri, E. D.
December 14, 1972.
Hyman G. Stein, Charles H. Spoehrer, St. Louis, Mo., for plaintiffs.
Clyde E. Craig, Wiley, Craig, Armbruster & Wilburn, St. Louis, Mo., for defendant.

MEMORANDUM OPINION
HARPER, District Judge.
This is an action brought by plaintiffs, the Motor Carriers Council of St. Louis, Inc., and seventy-nine trucking firms (the trucking firms will hereinafter be referred to as the employer plaintiffs) for damages resulting from *462 breach of a no-strike agreement in a collective bargaining agreement by defendant, Local Union 600, affiliate of the International Brotherhood of Teamsters, Chauffeurs, Warehousemen and Helpers of America (hereinafter referred to as Local 600). By leave of Court, fifteen of the seventy-nine employer plaintiffs dismissed their cause of action herein with prejudice. Local 600 maintains its principal office in the City of St. Louis, Missouri. This Court has jurisdiction under Section 301 of the Labor Management Relations Act, 1947, 29 U.S.C. § 185.
The violation of a no-strike agreement by a union entitles an employer to damages. Drake Bakeries, Inc. v. Bakery Workers Local No. 50, AFL-CIO, 370 U.S. 254, 82 S.Ct. 1346, 8 L. Ed.2d 474 (1962). It was agreed that this case be tried on the merits except for the question of damages pursuant to Rule 42(b) F.R.Civ.P., Title 28 U.S.C. The issues as to the merits are common to all the plaintiffs. The question of damages requires separate proof by each plaintiff and, therefore, will necessitate many weeks of trial time. Because of these considerations it was the opinion of the Court and the attorneys that separate trials on the issues of the merits and damages would be conducive to expedition and economy. Therefore, the trial was limited to and this opinion will deal with only the merits.
Plaintiffs and Local 600 were parties to the National Master Freight Agreement (hereinafter referred to as the National Agreement) and the Central States Area Over-The-Road Motor Freight Supplemental Agreement (hereinafter referred to as the Central States Supplemental Agreement), all being Exhibit A attached to and part of Plaintiffs' Exhibit 2. Article 68, Termination Clause, of the Central States Supplemental Agreement, at page 100, provides:
"The term of this Supplemental Agreement is subject to and controlled by all of the provisions of Article 37, of the National Agreement between the parties hereto."
Article 37 of the National Agreement provides in part, page 50, as follows:
"Section 1. This Agreement shall be in full force and effect from April 1, 1967, to and including March 31, 1970, and shall continue from year to year thereafter unless written notice of desire to cancel or terminate the Agreement is served by either party upon the other at least sixty (60) days prior to date of expiration.
"Section 2. Where no such cancellation or termination notice is served and the parties desire to continue said Agreement but also desire to negotiate changes or revisions in this Agreement, either party may serve upon the other a notice at least sixty (60) days prior to March 31, 1970, or March 31st of any subsequent contract year, advising that such party desires to revise or change terms or conditions of such Agreement.
"Section 3. Revisions agreed upon or ordered shall be effective as of April 1, 1970, or April 1st of any subsequent contract year. The respective parties shall be permitted all legal or economic recourse to support their requests for revisions if the parties fail to agree thereon."
Article 43 of the Central States Supplemental Agreement, page 63, provides in part:
"The Union and the Employers agree that there shall be no strike, lockout, tie-up, or legal proceedings without first using all possible means of settlement, as provided for in this Agreement, and in the National Agreement, if applicable, of any controversy which might arise."
By letter dated December 17, 1969, Local 600, by its president, Donald Lane, served upon each of the plaintiffs a notice which stated in part:
"YOU ARE HEREBY NOTIFIED that the NATIONAL OVER-THE-ROAD, CITY CARTAGE, FREIGHT GARAGE, AND FREIGHT OFFICE *463 POLICY AND NEGOTIATING COMMITTEE, the CENTRAL CONFERENCE OF TEAMSTERS, and the undersigned LOCAL UNION, as bargaining agents for the involved employees, desire to negotiate changes or revisions in the NATIONAL MASTER FREIGHT AGREEMENT and in all AREA, REGIONAL and LOCAL SUPPLEMENTS, ADDENDA, APPENDICES or RIDERS thereto for the contract period commencing April 1, 1970, as provided in Article 37 thereof."
The first introductory meeting between the union and employer representatives was held on January 7, 1970, in Washington, D. C. At that meeting, the Employer and Union Negotiating Committees were introduced and there was an exchange of the negotiation authorizations of the Employer and Union representatives and an exchange of initial proposals for amending the National and Local Supplemental Agreements. For its negotiation authorization, the International Union gave to the employer representatives a letter from Frank Fitzsimmons, then chairman and general vice president of the National Freight Industry Negotiating Committee, which stated in part:
"We have not solicited new powers of attorney this year from the various local unions that are party to the National Master Freight Agreement and supplements that are applicable to their members. Under the provisions of Article 16, Section 4(a) of the International Constitution, all of the local unions that are presently party to such agreements are required to remain parties to such agreements."
Local 600 had given the International Union a power of attorney to negotiate for it on November 9, 1966, prior to the 1967 negotiations. This power of attorney had never been revoked. Donald Lane admitted that he considered that the National Committee had the authority to negotiate on behalf of Local 600 with respect to the national issues in the National Agreement and that he had never informed the International Union or National Committee that they had no authority to bargain for Local 600. Donald Lane testified, however, that it was never his understanding that the International Union or the National Committee could negotiate on behalf of Local 600 after March 31, 1970.
The parties to the negotiation agreed upon a four-step procedure for negotiations: (1) Negotiations by the National Committees on the articles in the National Agreement; (2) negotiations by local subcommittees on clauses to be contained in the various supplemental agreements; (3) referral of issues unresolved by the Supplemental Agreement Negotiating Committees for disposition by the National Committees; and (4) negotiation on all monetary aspects.
The actual negotiations began in the early part of February. Negotiating meetings were held on a regular basis, either by phone or direct contact, from early February to March 31, 1970, on the non-monetary clauses in the National and Local Supplemental Agreements. Many agreements had been reached on non-monetary clauses in both the National and Local Supplemental Agreements during this period.
On March 31, 1970, substantive discussions were initiated on the monetary items for the new contract. When the negotiations were recessed that evening agreement had not been reached, but neither side had advised the other that it did not desire to continue negotiations and it was understood by the parties that negotiations would continue with a meeting the following day. No final contract proposals had been submitted by either party.
The discussions continued on April 1, 1970, along with members of the Federal Mediation and Conciliation Service, and an agreement was reached on the monetary items at about three o'clock a. m. on April 2, 1970. Following the agreement on the monetary items, the National Committees of the employer and union representatives met regularly thereafter for the purpose of concluding the *464 negotiations. These meetings included the approval of the supplemental agreements that had been negotiated by the local supplemental committees. Final approval of the supplemental agreements by the Employer and Union National Committees occurred on or about April 28, 1970. Subsequently, Local 600 became a signatory to the National Agreement and the Central States Supplemental Agreement effective April 1, 1970.
Donald Lane was a member of the Central States Negotiating Committee representing employees with respect to local issues in the Central States Supplemental Agreement. Donald Lane attended between five and ten negotiating conferences in Washington, D. C. during the period January 7th through March 31st, 1970. During this period agreement had been reached on a number of proposals between the Central States Employer and Union negotiators.
On March 31, 1970, Donald Lane was in Washington, D. C. participating in negotiations for the Central States Supplemental Agreement. Prior to his departure for St. Louis on the night of March 31, 1970, Lane was informed of the contents of a telegram sent to Local 600 and all freight local unions on March 31, 1970, by Frank Fitzsimmons, which stated:
"The employers have not accepted our last offer for the National Freight Agreement. They have not asked for an extension of the contract beyond midnight, March 31, and there is no agreement on retroactivity. At the request of the Federal Mediation and Conciliation Service, we will continue negotiations at 1:00 p. m. Wednesday, April 1, 1970, and will keep you advised thereafter."
At approximately 12:01 a. m. on April 1, 1970, Local 600 authorized and directed the driver employees of each of the employer plaintiffs to strike and cease work, and such strike and cessation of work continued until on or about May 8, 1970.
Frank Fitzsimmons sent several telegrams and a letter to Local 600 after March 31, 1970, informing them that the strike they were conducting was not authorized by the International Brotherhood of Teamsters and that negotiations were continuing and instructing Local 600 to return to work.
Much of defendant's evidence at trial was directed toward the position of defendant that the International Union and the National Union negotiating team did not have authority to represent defendant. Defendant apparently abandoned this position since its only contention in its post trial brief is that "plaintiffs have failed to establish by a clear preponderance of the evidence that the parties had not failed to agree on revisions in the April 1, 1967, contract on its expiration date of March 31, 1970."
Local 600 had authorized the national negotiating committee to negotiate for it the 1970 National Agreement. The power of attorney Local 600 gave the national negotiating committee on November 6, 1966, had not been revoked and was still in force for the 1970 negotiations. Both the International Union and Local 600 considered that the National Negotiating Committee had the authority to negotiate on behalf of Local 600 with respect to the National Agreement. Although Donald Lane testified that it was never his understanding that the National Negotiating Committee could negotiate on behalf of Local 600 after March 31, 1970, there is nothing to indicate the authority of the National Negotiating Committee would end at this point. At no time did Local 600 advise anyone that it was not being represented by the National Negotiating Committee.
Donald Lane himself participated in the negotiations on the Central States Supplemental Agreement. Lane also admitted that the Central States Committee had authority from Local 600 to negotiate the Central States issues except for some local rules that are negotiated on a local basis.
The letter notice sent by Local 600 on December 17, 1969, to the employer *465 plaintiffs was given pursuant to Section 2 of Article 37 of the National Agreement. Under Section 2, such notice is given where "* * * the parties desire to continue said Agreement but also desire to negotiate changes or revisions in this Agreement * * *."
Under Section 1 of Article 37 of the National Agreement and under Article 38 of the Central States Supplemental Agreement, the agreements were to continue from year to year after March 31, 1970, unless there was written notice by either party of a desire to cancel or terminate the agreements. No one ever gave notice of a desire to cancel or terminate the agreements and, therefore, the agreements were still in effect after March 31, 1970. Local 600 was still obligated to comply with the provisions of Article 43 of the Central States Supplemental Agreement after March 31, 1970.
The strike by Local 600 violated Article 43. Local 600 contends that it was entitled to strike because of that portion of Article 37 of the National Agreement which states: "[t]he respective parties shall be permitted all legal or economic recourse to support their requests for revisions if the parties fail to agree thereon."
Local 600 contends that, because many of the issues were still not resolved on March 31, 1970, because there was still a significant disparity between the parties' positions on wages, and because of the participation by the Federal Mediation and Conciliation Service on April 1, 1970, the bargaining had reached an impasse. This conclusion is untenable. The record clearly shows that there was no impasse. During the period of January 7th through April 28th, 1970, there was no interruption in the negotiations, there was no time when any party refused to come to the bargaining table, and there was no final contract proposal submitted by either party.
Simply because the parties had not yet agreed on certain changes and revisions by March 31, 1970, does not mean that the parties had failed to agree within the meaning of the contract. Obviously, the terminology "fail to agree" was intended to mean something in the nature of an impasse or deadlock. If this were not the case the parties would always "fail to agree" upon the commencement of any negotiations, thus permitting "all legal or economic recourse" by the parties at that point. It is evident that this was not the intent of the parties. By a clear preponderance of the evidence plaintiffs have shown that there was no failure to agree within the meaning of Section 3 of Article 37 of the National Agreement. Local 600 violated Article 43 of the Central States Supplemental Agreement when it authorized the strike which lasted from April 1, 1970, to May 8, 1970.
This memorandum opinion is adopted by the Court as its findings of fact and conclusions of law. Accordingly, it is hereby ordered, adjudged and decreed that plaintiffs are entitled to recover from defendant damages resulting from defendant's breach of Article 43 of the Central States Supplemental Agreement, and the Clerk of the Court will prepare and enter the proper order to that effect.
This order, in the opinion of the Court, involves a controlling question of law as to which there is substantial ground for difference of opinion and an immediate appeal from the order may materially advance the ultimate termination of the litigation, and it is, therefore, ordered that the defendant herein may make application for appeal under the provisions of Section 1292(b), Title 28 U.S.C., and if appeal is permitted, the proceedings herein are stayed until further order.