**In re AIR CRASH DISASTER AT JOHN F. KENNEDY INTERNATIONAL AIRPORT ON JUNE 24, 1975.**

MDL No. 227.

United States District Court, E. D. New York.

Dec. 1, 1978.

Milton G. Sincoff, Kreindler & Kreindler, New York City, Frank H. Granito, Jr., Speiser & Krause, New York City, Jack C. Benjamin, Kierr, Gainsburgh, Benjamin, Fallon & Lewis, New Orleans, La., Tony B. Jobe, New Orleans, La., for plaintiffs.

Walter E. Rutherford, Haight, Gardner, Poor & Havens, New York City, for defendant Eastern Air Lines.

Michael J. Pangia, Asst. Director, Torts Branch Civ. Div., U. S. Dept. of Justice, Washington, D. C., for defendant United States.

## DECISION AND ORDER

BRAMWELL, District Judge.

The instant matter concerns certain Louisiana plaintiffs' motions to remand their respective cases to New Orleans for the trial of damages. It also involves Eastern Airlines' motion for a certification of the order entered in accordance with the jury's finding of negligence for appeal to the Second Circuit Court of Appeals pursuant to 28 U.S.C. § 1292(b) (1976) or, in the alternative, pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. However, prior to the discussion and ultimate resolution of said motions, their stark outlines must be colored by some facts.

## FACTS

The ill-fated Eastern Airlines flight 66 left New Orleans, Louisiana on June 24, 1975 and crashed at Kennedy Airport in the course of an instrument landing approach. This catastrophic event marked the demise of one hundred and thirteen of the one hundred and twenty-four individuals aboard the aircraft. Nine passengers and two crew members survived the crash. Shortly thereafter, numerous actions were commenced in four federal district courts, to wit, the Southern District of New York, the Eastern District of New York, the Eastern District of Louisiana, and the Southern District of Mississippi. Since a common legal and factual thread was interwoven in these geographically diverse suits, the defendant Eastern Airlines moved the Judicial Panel on Multidistrict Litigation for an order pursuant to 28 U.S.C. § 1407 transferring all actions to this Court for coordinated and consolidated pretrial proceedings. After due deliberation, the Panel granted Eastern's motion. *See In re Air Crash Disaster at John F. Kennedy International Airport on June 24, 1975*, 407 F.Supp. 244 (Jud. Pan.Mult.Lit.1976). At the outset, thirty-seven actions were transferred. However, according to the Panel, the multidistrict litigation grew in time to ninety-one cases.

In the course of pretrial discovery, some procedural restructuring transpired. Among the litigious changes made were a severance of the passenger cases from the crew cases and a severance of the passengers' claims against Eastern Airlines and the United States from their claims against Boeing, Rockwell/Collins and the Port Authority. Furthermore, on December 15, 1977, after hearing argument and after due deliberation, this Court ordered that all passenger actions commenced in any other Court and transferred to this Court by the Panel pursuant to 28 U.S.C. § 1407 were to be transferred to this Court pursuant to 28 U.S.C. § 1404(a) and were to be consolidated for a trial on liability. Said order further provided that such a transfer was to be effected without prejudice to the right of any of the passenger plaintiffs to move subsequent to final judgment for an order remanding their individual actions to the district from whence it came for a trial on damages.

In the ensuing months, and after one adjournment of the May 1, 1978 trial date, settlement negotiations among the passenger plaintiffs, Eastern Airlines and the United States did not bear fruit. Rather, as the new September 11, 1978 trial date drew near, a liability trial appeared inevitable. On the eve of trial, however, the United States stated that it would not contest liability and agreed to permit a liability judgment to be entered against it on behalf

of the remaining passenger plaintiffs who had not settled. However, it did so without prejudicing its future right to raise certain specified defenses such as capacity to sue.

In view of this no-contest position, a motion was made to sever the cross-claims and third-party claims that the defendant Eastern Airlines had interposed against the United States. After due deliberation, and in view of the apparent existence of a contribution agreement which would render the trial of such claims but an idle ceremony, said motion to sever was granted. This further pared the liability trial leaving Eastern Airlines as the sole defendant. This change in posture, however, did not result in the settlement of the liability issue. Instead, on September 18, 1978, the liability question proceeded to trial.

On the morning of trial, fifteen of the passenger plaintiffs approached the bench for an order directing the entry of judgment against Eastern Airlines on the basis that Eastern was liable without fault under the provisions of the Warsaw Convention/Montreal Agreement. After due consideration, said motion was subsequently granted, cf. Day v. Trans World Airlines, Inc., 393 F.Supp. 217 (S.D.N.Y.), aff'd, 528 F.2d 31 (2d Cir. 1975), cert. denied, 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976), and the cases of the fifteen Warsaw/Montreal plaintiffs were ordered severed from the impending liability trial.

During the course of the trial, four of the thirty-six passenger cases on trial settled, thus leaving thirty-two passenger plaintiffs to be bound by the jury's finding. The trial was long and, due to the scientific and technical nature of the evidence, it was somewhat complicated. However, after numerous weeks, the trial odyssey concluded on October 25, 1978 when the jury returned a unanimous verdict in favor of the plaintiff passengers against Eastern Airlines on the issue of liability. The motions for resolution today followed quickly on the heels of said verdict, and, for the sake of clarity, they will now be discussed individually.

## LOUISIANA PLAINTIFFS' REMAND MOTION

Consideration will first be given to the Jenkins, Hickey, Domanque, Windbourne and Bright motions to remand their respective cases to the District Court for the Eastern District of Louisiana and the Noland motion to remand his case to the Middle District of Louisiana for individual trials on the issue of damages. In support of these motions, the plaintiffs rely on the aforementioned December 15, 1977 order of this Court wherein it was stated that the transfer of the multidistrict cases for a trial on liability would not foreclose the plaintiffs from moving before this Court for a remand to their original districts for trials on damages.

In order to reach a determination of these remand motions, the December 1977 order and the reasoning underlying it must be examined. In view of the somewhat unorthodox nature of this order, not to undertake such a discussion would be similar to attempting to gather all of the rice after the wedding is over.

Normally, after pre-trial proceedings have drawn to a conclusion in a multidistrict case, each of the cases transferred by the Panel pursuant to 28 U.S.C. § 1407 would be

remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated . . . .

28 U.S.C. § 1407(a) (1976). In the instant case, however, this procedure was not followed. Instead, in light of the transferee Court's power to transfer the transferred cases pursuant to section 1404(a), Pfizer, Inc. v. Lord, 447 F.2d 122, 125 (2d Cir. 1971); In re Air Crash Near Duarte, California on June 6, 1971, 357 F.Supp. 1013, 1015, 1016 (C.D.Cal.1973); In re Antibiotic Antitrust Actions, 333 F.Supp. 299, 303 (S.D.N.Y.1971); cf. In re Plumbing Fixture Cases, 298 F.Supp. 483, 495–96 (Jud.Pan. Mult.Lit.1968), as has been noted, this Court ordered the section 1407 transfer cases to be transferred pursuant to § 1404(a) and con-

solidated for trial in this Court on the issue of liability.

Although the Panel had transferred the subject cases for pretrial purposes only, this Court's order did not undermine the intent underlying their directive. For even if the Panel had wanted to transfer said cases for trial, it was without authority to do so. *Pfizer, supra* at 124. Moreover, that such a 1404(a) transfer by the transferee Court was contemplated by the Panel is apparent from a reading of Rule 11(b) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation:

> Each transferred action that has not been terminated in the transferee court will be remanded by the Panel to the transferor district for trial, *unless ordered transferred by the transferee judge to the transferee or other district under 28 U.S.C. § 1404(a) or 28 U.S.C. § 1406.* In the event that the transferee judge transfers the action under 28 U.S.C. §§ 1404(a) or 1406, no further action of the Panel shall be necessary to authorize further proceedings including trial.

Rules following 28 U.S.C. § 1407 (1976) (emphasis added).

The entry of the order directing the transfer and consolidation of the cases for a trial on liability was predicated on this Court's view of the practicalities of this case. Of significance in this regard is Judge Hall's cogent observation in one of his opinions involving the Duarte air crash litigation. In ordering that all cases assigned to him by the Panel pursuant to section 1407 be transferred to him pursuant to section 1404(a) for trial, Judge Hall reasoned that

> [T]here is only one operative set of facts for the determination of liability. To remand the cases to the various courts for trial after the completion of discovery would require trials on the merits in three different districts. . . . [The] inescapable fact is that such trials, at best, require extensive and intensive preparation and skill and are usually prolonged, and may produce different results in different districts. Such a result in

this case is certainly not "in the interest of justice" nor "for convenience of witnesses." Moreover, each of the cases transferred here "might have been brought" in this district.

*In re Air Crash Near Duarte, supra* at 1016. Such considerations were deemed equally applicable to the instant case especially in light of the Panel's own firm opinion that

> the district containing the situs of the crash is generally the most appropriate transferee district for litigation of this type [,]

*In re Air Crash Disaster near Dayton, Ohio*, 310 F.Supp. 798, 799 (Jud.Pan.Mult.Lit. 1970), coupled with its observation in transferring the instant case that

> [m]ost of the anticipated key witnesses on the issue of liability reside near Kennedy Airport, for example: the FAA air traffic controllers from the airport control tower, traffic controllers from the New York Common I.F.R. Room and the New York Air Route Traffic Control Center, local weather observers and forecasters, Port of New York Authority officials responsible for supervising the airport's operations, and approximately forty eyewitnesses. Moreover, the tape recordings of conversations between the traffic controllers and the flight-crew, as well as other relevant documents from the FAA and the National Weather Service, are located in the Eastern District of New York.

*In re Kennedy Air Crash, supra* at 246.

Although the Panel's Rule 14 may have contemplated a section 1404(a) transfer in terms of a transfer of the liability as well as the damage issue, a 1404(a) transfer order contemplating the trial of the liability issue only is not completely devoid of precedent. In the case of *In re Multidistrict Civil Actions Involving the Air Crash Disaster, New Hanover, New Hampshire, on October 25, 1968*, transferee Judge Hugh Bownes, now a First Circuit Judge but then sitting as district judge, ordered the transfer of all cases to New Hampshire for a consolidated trial on liability. In the event liability was established, Judge Bownes further directed the remand of the cases to the districts

where the actions had originated for trials on damages. MDL No. 43 (D.C.N.Hamp. 1971), *noted in* A. Wright & A. Miller, Manual For Complex Litigation Part 1, § 522(2) at 159 n. 351 (1977). Considering the aforementioned practical and equitable factors, and following Judge Bownes' initiative, this court opined that a transfer for a liability trial was warranted, impliedly reserving for a later date a decision on whether the individual damage trials should also be held in this Court. Thus, at this point, just as this Court examined the equities and practicalities in transferring and consolidating the cases for a liability trial, an examination of the same must now be undertaken with respect to the requested remand for damage trials.

■ Of initial note in this respect is that a prerequisite to a section 1404(a) transfer is that it can only be made to a district where the action might have been brought. 28 U.S.C. § 1404(a) (1976). Since the plaintiffs involved in the immediate remand motions reside in the respective districts to which they seek a transfer, venue would be proper. 28 U.S.C. § 1391(a) (1976). As to the factual practicalities of the instant requests, the following facts are of significance. The business records of both the plaintiffs and the decedents are located in Louisiana, most of their damage witnesses reside in Louisiana, the defendant Eastern Airlines does business and has been served with process in Louisiana, and the respective districts represent the plaintiffs' choice of forum as their original actions were filed there. Thus, there exists no commonality of facts or considerations of party and witnesses convenience which would tie the trial of the damage issue to New York. To the contrary, the consideration of the convenience of the parties and the witnesses and the interests of justice dictate that the Middle District and Eastern District of Louisiana are the more appropriate forums for the determination of damages in these cases. Accordingly, the instant motions for a remand of the Jenkins, Hickey, Domanque, Windbourne and Bright cases to the Eastern District of Louisiana and for remand of the Noland case to the Middle District of Louisiana pursuant to 28 U.S.C. § 1404(a) are granted in all respects, said transfers to be effective immediately.

## EASTERN'S MOTION FOR RULE 54(b) CERTIFICATION

■ As has already been noted, Eastern Airlines also approaches the bench for express determination by this Court that there is no just reason for delay in the entry of judgment in conformity with the jury's finding of negligence, for an express direction for the entry of said judgment, and for certification that said judgment is final and appealable pursuant to Rule 54(b) of the Federal Rules of Civil Procedure. Despite the fact that Eastern has asked for Rule 54(b) certification only in the event that its 28 U.S.C. § 1292(b) motion is denied, this Court is of the opinion that an initial examination of this request is warranted. This is so because it appears that in the post verdict confusion, the Clerk of this Court entered a judgment in MDL 227 in favor of the plaintiffs which employs Rule 54(b) language. Said judgment was not a result of a proposed, noticed order, nor was it signed by this Court. Similarly, the judgments entered on behalf of the fifteen Warsaw/Montreal plaintiffs by the Court Clerk, unlike the noticed order submitted and signed by this Court, contain Rule 54(b) language. Thus, the propriety of a Rule 54(b) certification and subsequent judgment is fit for discussion.

■ Although Eastern has urged this Court for certification pursuant to Rule 54(b), it cites no case law in support of its position. Rather, it merely directs this Court's attention to Rule 54(b), which reads in pertinent part:

> [T]he court may direct the entry of a final judgment as to one or more but fewer than all the claims or parties only upon the express determination that there is no just reason for delay . . . .

Fed.R.Civ.P. 54(b). As was recently noted by the Second Circuit,

[t]he meaning of "claim" in this context has been the subject of some dispute, but it is now generally accepted that a claim asserting only one legal right growing out of a single transaction or series of related transactions states a single claim for relief.

*Acha v. Beame*, 570 F.2d 57 at 62 (2d Cir. 1978). *See Liberty Mutual Insurance Co. v. Wetzel*, 424 U.S. 737, 743 n. 4, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976); *Cinerama, Inc. v. Sweet Music, S. A.*, 482 F.2d 66, 69 (2d Cir. 1973); *Aetna Casualty & Surety Co. v. Giesow*, 412 F.2d 468, 470 (2d Cir. 1969). In *Brunswick Corporation v. Sheridan*, 582 F.2d 175 (2d Cir. 1978), the Second Circuit stated that

[t]o satisfy the requirements of Rule 54(b) . . . the claim adjudicated must be a "claim for relief" separable from and independent of the remaining claims in the case.

*Id.* at 182.

Indeed, the instant liability verdict is not separate and apart from the damage claim in the context of Rule 54(b). Rather, it is merely the first step towards the ultimate relief sought by the passenger plaintiffs. As was succinctly stated by the Supreme Court in *Liberty Mutual Insurance Co. v. Wetzel, supra*, a case involving a Rule 54(b) request and one which specifically sounds the death knell to Eastern's Rule 54(b) motion:

It is obvious from the District Court's order that respondents, although having received a favorable ruling on the issue of petitioner's liability to them, received none of the relief [as to damages] which they expressly prayed for in the portion of their complaint.

*Id.* 424 U.S. at 742, 96 S.Ct. at 1205. With this in mind, the Supreme Court concluded that the order in *Wetzel*

constitut[ed] a grant of partial summary judgment limited to the issue of petitioner's liability. Such judgments are by their terms interlocutory, and where assessment of damages or awarding of other relief remains to be resolved have never been considered to be 'final' within the meaning of 28 U.S.C. § 1291.

*Wetzel, supra* at 744, 96 S.Ct. at 1206 (citation omitted). Since

[t]o satisfy the requirements of Rule 54(b) a judgment must have that degree of finality for appealability under 28 U.S.C. § 1291,

*Brunswick Corp., supra* at 182, in light of *Wetzel*, Eastern's motion for Rule 54(b) certification must be denied. In view of the aforementioned legal precedent, to hold otherwise would be ignoring the existence of something patently visible. Therefore, any judgment entered in MDL 227 in conformity with the jury's verdict or in the fifteen Warsaw/Montreal cases are not to be construed as Rule 54(b) certifications and judgments, and, to the extent that said judgments are misleading in this regard, said judgments are hereby modified and the Rule 54(b) language is ordered deleted.

## EASTERN'S MOTION FOR SECTION 1292(b) CERTIFICATION

Since it has already been established that the subject liability order is not final, it follows that it is interlocutory. Possessing such a nature, its only hope for immediate appeal rests in a section 1292(b) certification. Accordingly, the final motion at issue today is ripe for discussion.

Section 1292(b) of Title 28 of the United States Code gives an interlocutory order a breath of appealability provided that said order involves a controlling question of law to which there is a substantial ground for difference of opinion and the trial court finds that an immediate appeal may materially advance the ultimate termination of the litigation. Although Eastern urges this Court for section 1292(b) certification, it cites but one case in support of such a request. Furthermore, it cites no specific legal rulings by this Court which bespeak of controlling questions of law to which there is a substantial ground for difference of opinion, and, needless to say, this Court is disinclined to believe that any such rulings were made.

At first glance, therefore, Eastern's argument that the determination of the lia-

bility issue itself involves a controlling question of law appears to be one drawing an offhand conclusion which should promptly be rejected. Indeed, if the instant action was but a garden variety negligence case, this Court would be inclined to adopt Judge Lasker's opinion in *Leighton v. New York Susquehanna and Western R. R. Co.*, 306 F.Supp. 513 (S.D.N.Y.1969), a case involving a suit by one plaintiff against one defendant for attorney's fees, that the severance of the damage from the liability issues and subsequent finding of liability did not transpose the liability issue into a controlling question of law certifiable under section 1292(b). *Id.* at 514. But the instant case is not the normal negligence case; it has been colored by its multidistrict nature. Therefore, despite the fact that the liability order does not present an exact controlling question of law in as lucid terms as a question of personal jurisdiction over the defendant, *see Processing Equipment Corp. v. Maxwell*, 468 F.2d 1326 (2d Cir. 1972), a question of choice of law, *see Junco v. Eastern Airlines, Inc.*, 399 F.Supp. 666 (S.D.N.Y. 1975), *aff'd mem.*, 538 F.2d 310 (2d Cir. 1976), or a question of whether a party is entitled to a jury trial, *see Crane Co. v. American Standard, Inc.*, 490 F.2d 332 (2d Cir. 1973), the multidistrict nature of this action clothes the liability issue with significance as a controlling question of law.

In the multidistrict litigation of *In re Western Liquid Asphalt Cases*, 487 F.2d 191 (9th Cir. 1973), *cert. denied* 415 U.S. 919, 94 S.Ct. 1419, 39 L.Ed.2d 474 (1974), the Ninth Circuit's involvement came by way of an appeal from the district court's order granting a partial summary judgment directed solely to damages. There, the district court held that the plaintiffs were precluded as a matter of law from recovering such damages as they ultimately might be able to prove. Although the Ninth Circuit did not discuss the applicability of section 1292(b) to the issues presented on appeal, it, nonetheless, noted that it would permit the appeal to proceed. *Id.* at 193.

A similar procedure was followed in *Ingham v. Eastern Airlines, Inc.*, 373 F.2d 227 (2d Cir.), *cert. denied*, 389 U.S. 931, 88 S.Ct. 295, 19 L.Ed.2d 292 (1967). Although not a multidistrict litigation case, *Ingham* is nonetheless of significance herein. Like the instant case, *Ingham* was set in motion by the tragic misfortune of an air crash. Rather than proceeding in the multidistrict litigation form, *Ingham* proceeded by way of certain test cases against the United States and Eastern. Judge Abruzzo, sitting without a jury, initially tried the liability and indemnity issues, saving the determination of the damage issue for a later time, if necessary.

*Ingham* is of particular interest to the instant action as Judge Abruzzo was posed with factual and legal issues similar to those involved herein. After the trial, Judge Abruzzo concluded that both Eastern and the United States were concurrently negligent and, thus, were liable to the test plaintiffs. He further concluded that neither defendant was entitled to indemnity. In accepting the appeal, the Second Circuit summarily noted that

[t]he court properly certified these cases for appeal under 28 U.S.C. § 1292(b).

373 F.2d at 230. Thereafter, the Court proceeded to discuss at length not only Judge Abruzzo's legal rulings but also his factual findings with respect to the government's negligence, Eastern's negligence and the indemnity issue, concluding that Judge Abruzzo's judgment was correct.

Similarly, in *Motor Carriers Council of St. Louis Inc. v. Local Union No. 600*, 370 F.Supp. 461 (E.D.Miss.1972), *aff'd*, 486 F.2d 650 (8th Cir. 1973), which was also not a multidistrict case, the District Court tried the issue of liability at the outset, the damage issue to be tried at a subsequent time, if appropriate. At the conclusion of his opinion finding the defendant liable, Judge Harper certified his liability determination for appeal to the Eighth Circuit Court of Appeals. In doing so, he did not specify what constituted the controlling question of law but, instead, adopted the broad language of section 1292(b). 370 F.Supp. at 465. Thereafter, the Eighth Circuit "permitted an interlocutory appeal on the liabil-

ity issue," *Motor Carriers Council, supra,* 486 F.2d at 651, and advanced to a discussion affirming Judge Harper's factual and legal findings. *Accord, Mills v. Electric Autolite Co.,* 403 F.2d 429, 431 (7th Cir. 1968), *vacated on other grounds,* 396 U.S. 375, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). (Seventh Circuit accepted and ruled on a § 1292(b) appeal from the district court's order granting an interlocutory judgment in favor of petitioners on the issue of liability.)

Although these cases did not involve a jury's findings, the acceptance of section 1292(b) certification by the respective circuits and their subsequent extensive examinations of the factual and legal issues contained therein indicate that the circuit courts were of the opinion that, in these cases, the determination of the liability issue itself constituted a controlling question of law. Indeed, such a finding would not be violative of the expressed federal disfavor towards premature piecemeal appeals, *see Switzerland Cheese Ass'n, Inc. v. Horne's Market, Inc.,* 385 U.S. 23, 24, 87 S.Ct. 193, 17 L.Ed.2d 23 (1966); *Shakur v. Malcolm,* 525 F.2d 1144, 1147 (2d Cir. 1975), as the issue of liability in such unusual cases is more closely analogous to the intermission which marks the conclusion of Act I of a two-act play than it is to numerous and sundry pretrial motions which may be regarded as mere scenes in Act I.

Moreover, that an interlocutory appeal from a liability judgment is not as unique as it might initially appear to be is evidenced not only by the aforementioned case law but by 28 U.S.C. § 1292(a). Said section explicitly sanctions appeals from orders which adjudge a patent infringement prior to an accounting and from orders which determine liability in an admiralty case prior to the assessment of damages. With respect to the latter section 1292(a) exception, of relevance to the instant question are the Eighth Circuit's comments in *Slatton v. Martin K. Eby Construction Co., Inc.,* 491 F.2d 707, 708 (8th Cir. 1974) that § 1292(a)(3) was primarily enacted to avoid the delay and expense engendered by taking further evidence on the question of damages, when such an undertaking might be unnecessary if the decree as to liability should be reversed.

Of further significance in deciding whether the liability order should be allowed to presently lie fallow is the legislative intent underlying section 1292(b). Specifically, the House Report sets forth illustrative orders contemplated by the appeal scheme of section 1292(b):

> Without cataloguing all of the cases in which interlocutory appeals could be proper, the following categories are those which would generally be affected: (a) cases where an accounting is necessary upon an adjudication of liability under a contract, (b) cases where a long trial would be necessary for the determination of liability or damages upon a decision overruling a defense going to the right to maintain the action, [and] (c) cases involving third party defendants where there would be no reason for continuing the action if the third parties could not be held liable . . . . .

H.Rep.No.1667, 85th Cong., 2d Sess. (1958), *quoted in* 9 J. Moore, Federal Practice ¶ 110.22[1] at 258 (2d ed. 1975).

A comparison of these illustrative orders places the instant one in a similar stance. Rather than the necessity of an accounting after the finding of contractual liability, here there exists the apparent necessity for an evaluation of damages after a finding of tort liability. Of note in this respect is that, like the instant case, a finding of contractual liability may entail a review of both legal rulings and findings by the jury. As to the second congressional category, a liability order is analogous to a decision overruling a defense which goes to the right to maintain the action, as, in either case, the parties adversely affected are foreclosed from pursuing the matter further on the trial level. While long damage trials may not necessarily ensue here, in light of some of the cases involved, there appears to be a distinct possibility of this eventuality. At the very least, numerous damage trials, possibly numbering as many as thirty-two, are likely to follow. Finally, the instant order

is also analogous to the third congressional category for there would be no reason to continue the action to its logical conclusion of damage trials if the Second Circuit found Eastern Airlines not liable. *Cf. Day v. Trans World Airlines, Inc.*, 393 F.Supp. 217 (S.D.N.Y.), *aff'd*, 528 F.2d 31 (2d Cir. 1975), *cert. denied*, 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976). While this Court is mindful of the Second Circuit's admonition that

> [p]iecemeal review except in the instances specifically provided for in 28 U.S.C. § 1292(b) and Rule 54(b) is not favored [,]

*D'Ippolito v. Cities Service Co.*, 374 F.2d 643, 648 (2d Cir. 1967), in light of the unusual character of this litigation, Congress' illustrative categories, as well as the exceptions carved out in section 1292(a), have a bearing upon the interpretation and subsequent use of section 1292(b).

Also germane to the question of whether the instant order involves a controlling question of law to which there is substantial ground for difference of opinion are the practical procedural problems involved herein. In this respect, one must retire from the legal arena and once again reflect upon the facts.

As was noted by the Panel in the opinion transferring the MDL 227 cases to this Court, the persons aboard Eastern's flight 66 had homes scattered throughout five states and twelve nations, *Kennedy Air Crash Disaster, supra* at 245, a majority of said persons having residences in Louisiana, Mississippi and Alabama. *Id.* at 246. Moreover, actions were also apparently commenced by representatives who reside in other than these five states. Further, as was also observed, there remain thirty-two cases replete with the potential of proceeding to damage trials, a number of which were not originally commenced in this district.

With these facts in mind, the ordered remand to Louisiana comes into play. For if those potential damage trials are brought to fruition, the question then arises as to where Eastern Airlines is to perfect its appeal. Since it has been held that "an inter-locutory order from which no appeal has been taken merges into the final decree[,]" *Arthur v. Nyquist*, 547 F.2d 7, 9 (2d Cir. 1976); *accord, Monarch Asphalt Sales Co., Inc. v. Wilshire Oil Co. of Texas*, 511 F.2d 1073, 1077 (10th Cir. 1975), it follows that the instant liability judgment would merge with any judgment flowing from a subsequent damage trial. Accordingly, if the damage trial was held in this district, the interlocutory liability order would merge into the damage judgment to become a final 28 U.S.C. § 1291 judgment open for review by the Second Circuit Court of Appeals. Similarly, if the damage judgment emanates from damage trials held in the Eastern and Middle Districts of Louisiana, the instant order would apparently merge into a final decree appealable to the Fifth Circuit Court of Appeals. Since two circuits would thereby be presented with the liability issue for review, there exists the possibility of inconsistent appellate rulings. The transition of this uncomfortable hypothetical situation into a reality would effectively dissolve the commonality foundation upon which this multidistrict litigation was built.

Moreover, additional problems loom amidst the potential involvement of more than one circuit court on the appeal of the liability issue. If said appeal proceeds in one circuit and said circuit affirms the finding of liability, it appears that Eastern Airlines would be collaterally estopped from litigating that issue in another circuit. *See, e. g., Lowell v. Twin Disc, Inc.*, 527 F.2d 767, 771 (2d Cir. 1975); *Zdanok v. Glidden Co., Durkee Famous Foods Division*, 327 F.2d 944, 955 (2d Cir. 1964). However, if one circuit reverses said finding, the question then arises whether the passenger plaintiffs without that circuit would be bound by such a determination. Although those plaintiffs may have been given a full and fair opportunity to litigate the liability issue at the trial level, it could not be said that this was the case on appeal. *Cf. Lowell, supra.* To further complicate matters, of note is the general rule that state law controls the application of the collateral

estoppel doctrine in federal diversity cases where the issues involved in the prior judgment required the application of state law. *See, e. g., Lowell, supra* ; *Ritchie v. Landau*, 475 F.2d 151, 154 (2d Cir. 1973). Thus, another question arises as to which state's law on collateral estoppel should be applied in the event the collateral estoppel issue arises. Moreover, if after a reversal in one circuit the other circuit affirmed the liability finding, the unsavory situation of inconsistent verdicts emerges. It does not appear that such difficulties are remedied by way of a stipulation to the effect that only one circuit will hear the liability issue as it appears that the parties cannot confer such jurisdiction upon one appellate court if another appellate court is the proper court to hear the appeal. *Cf. Liberty Mutual Insurance Co. v. Wetzel*, 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976); *Acha v. Beame, supra* at 61; *Blount v. Peerless Chemicals, Inc.*, 316 F.2d 695, 696 (2d Cir.), *cert. denied*, 375 U.S. 831, 84 S.Ct. 76, 11 L.Ed.2d 62 (1963).

Furthermore, the collateral estoppel problem would also rear its head if one circuit found that a new trial was warranted. This potentiality adds a further dimension to the sphere of conceivable problems for if, for example, the Fifth Circuit ordered a new trial and remanded it to the transferor court, the question then posed is whether this Court's remand to the transferor court pursuant to section 1404(a) empowers that court to hear the retrial of the liability issue. *Cf. In re Plumbing Fixture Cases*, 298 F.Supp. 484, 486 (Jud.Pan.Mult.Lit. 1968). Indeed, puzzling problems such as these have a bearing on the propriety of a section 1292(b) certification. Very recently, the Second Circuit impliedly recognized this in *In re The Duplan Corporation*, 591 F.2d 139 (2d Cir. 1978) wherein the Court noted that the Supreme Court's opinion in *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 98 S.Ct. 2454, 57 L.Ed.2d 351 (1978)

> indicates that the Court is willing to construe the phrase 'a controlling question of law' in § 1292(b) to include a procedural

determination that may importantly affect the conduct of an action.

*Duplan Corp., supra* at 148 n.11.

Moreover, such tactical troubles play an important role in the evaluation of the liability order in terms of the second tier of the section 1292(b) test. As was noted earlier, section 1292(b) certification is proper only if a controlling question of law exists and the trial court finds that an immediate appeal may materially advance the ultimate termination of the litigation. The importance of this latter finding is not to be underplayed as the awareness that time often drifts slowly and aimlessly was very much present in the Congressional mind when it considered the passage of section 1292(b). According to the Senate Report

> [t]he bill results from a growing awareness of the need for expedition of cases pending before the district court.

S.Rep.No.2434, 85th Cong., 2d Sess. (1958), *reprinted in* [1958] U.S.Code Cong. & Admin.News, pp. 5255, 5256. The Senate Report then proceeds to state that

> [a]ny legislation, therefore, appropriately safeguarded, which might aid in the disposition of cases before the district courts of the United States by saving useless expenditure of court time is such as to require the approbation of all those directly concerned with the administration of justice[.]

*Id.* at p. 5257. Of further significance in examining this aspect of section 1292(b) is the apparent interplay between this requirement and the controlling question of law requirement. As the Second Circuit observed in *Duplan Corporation, supra*,

> "[t]he courts have tended to make the 'controlling question' requirement one with the requirement that its determination 'may materially advance the ultimate termination of the litigation' " and that "[t]he critical requirement is that it [an interlocutory appeal] have the potential for substantially accelerating the disposition of the litigation" . . . . .

*Id.* at 148 n.11, *quoting* 9 J. Moore, Federal Practice ¶ 110.22[2] at 260 (2d ed. 1975).

With such time considerations in mind, the unusual, potential procedural difficulties herein must be reexamined. for if an appeal must await the completion of damage trials, then the possibility of the prosecution of numerous, separate appeals in different circuits exist. It would be blinking at the obvious to say that such an eventuality would not prolong the ultimate termination of the entire litigation. Inconsistent circuit court decisions and the concomitant issue of collateral estoppel would have a similar delaying effect.

On the other hand, if this Court certifies the liability issue for appeal without staying the commencement of damage trials, the ultimate termination of the litigation will not be prolonged as the adjudication of the damage issue may commence forthwith. Furthermore, if the appeal is certified and if it is accepted by the Second Circuit, in the unlikely event that the Second Circuit finds that Eastern is not liable, expensive and protracted damage trials would be completely avoided. Similarly, if a certification is granted, the appeal is heard by the Second Circuit, and the Second Circuit finds that a retrial of the liability issue is necessary, all of the unsettled passenger cases would be bound thereby, no possibility of an inconsistent ruling in another circuit would exist, and there would be no question that the retrial would proceed before this Court. Finally, if the liability order is certified and subsequently accepted for appeal by the Second Circuit and the Appellate Court proceeds with due haste to affirm the liability finding, no collateral estoppel problem will arise and damage trials may be rendered completely unnecessary as an affirmance may effectuate a willingness to settle the remaining damage issues. *Day v. Trans World Airlines, Inc.*, 393 F.Supp. 217, 223 (S.D.N.Y.1975). At the very least, certification and subsequent acceptance of the appeal by the Second Circuit will render it unnecessary for any other circuit to rule on the liability issue.

■ While this Court is mindful that section 1292(b) certification should be used sparingly and only in exceptional cases, *see* *Gottesman v. General Motor Corp.*, 268 F.2d 194 (2d Cir. 1959), in view of the foregoing discussion, pursuant to 28 U.S.C. § 1292(b), this Court hereby certifies that a controlling question of law is involved herein to which there is substantial ground for difference of opinion and that, in the Court's judgment, an immediate appeal would materially advance the ultimate termination of the litigation. However, in the interest of justice and the expeditious termination of this litigation, further proceedings in this multidistrict case are not to be stayed, and the plaintiffs may proceed forthwith with the commencement of damage trials.

The parties are hereby directed to settle an order on notice in conformity with this opinion on or before noon of December 5th, 1978.

### ADDENDUM TO DECEMBER 1, 1978 DECISION AND ORDER

■ According to Mr. Rutherford's letter dated November 27, 1978, the foregoing Decision and Order has been rendered moot due to the filing of notices of appeal in MDL 227 and the fifteen Warsaw Convention/Montreal Agreement cases by Eastern during the pendency of the underlying motions. As was noted in said Decision and Order, these judgments were entered by the Clerk of this Court and were not signed by a District Judge. Moreover, the Warsaw/Montreal orders that were submitted on notice and signed by the Court did not contain either Rule 54(b) language or an express direction to enter a Rule 54(b) judgment. Accordingly, the foregoing Decision and Order directed the modification of said judgments.

Support for this directive is found in Rule 60(a) of the Federal Rules of Civil Procedure which is directed to relief from a judgment or order and which provides:

(a) Clerical Mistakes. Clerical mistakes in judgments, orders or other parts of the record and errors therein arising from oversight or omission may be corrected by the court at any time of its own

initiative or on the motion of any party and after such notice, if any, as the court orders. During the pendency of an appeal, such mistakes may be so corrected before the appeal is docketed in the appellate court, and thereafter while the appeal is pending may be so corrected with leave of the appellate court.

See American Trucking Ass'n v. Frisco Transportation Co., 358 U.S. 133, 145, 79 S.Ct. 170, 3 L.Ed.2d 172 (1958); Kelley v. Bank Building and Equipment Corp., 453 F.2d 774, 778 (10th Cir. 1972). The notation by the Clerk of the Court in this case is a clerical mistake which falls within the confines of Rule 60(a). Since, as of this date, the notices of appeal at issue herein have not been docketed in the Second Circuit, it is within this Court's power to correct said mistake. Moreover, such a directive can be viewed as one utilizing

"the limited authority to take any steps that will assist the Court of Appeals in its determination."

Securities and Exchange Comm. v. Investors Security Corp., 560 F.2d 561, 568 (3d Cir. 1977), quoting, United States v. Lafko, 520 F.2d 622, 627 (3d Cir. 1975).

Accordingly, it is hereby

ORDERED, that the phrase "that there is no just reason for delay" in the Clerk's MDL 227 judgment and the phrase "there being no just reason for delay" in the Clerk's fifteen Warsaw Convention/Montreal Agreement judgments be deleted forthwith.