**INTERNATIONAL COMMODITIES EXPORT CORPORATION, Plaintiff,**

v.

**NORTH PACIFIC LUMBER CO., INC., Defendant.**

**No. 89 Civ. 5555(CES).**

United States District Court, S.D. New York.

March 29, 1990.

Curtis, Mallet–Prevost, Colt & Mosle by Turner P. Smith, New York City, for plaintiff.

Edwards & Angell by Alfred R. Paliani, New York City, for defendant.

## MEMORANDUM DECISION

STEWART, District Judge:

This is a diversity action in which plaintiff International Commodities Export Corporation ("ICEC") seeks a declaratory judgment under 28 U.S.C. §§ 2201 and 2202 stating that it has fully performed its obligations under a contract for the shipment of beans to defendant. Defendant North Pacific Lumber Company ("North Pacific") denies that the claim arose in the Southern District of New York ("the Southern District"), alleges that the complaint fails to state a claim, and denies that this court has in personam jurisdiction over it. Further, defendant counterclaims for

breach of express and implied warranty and seeks return of its payment to plaintiff, lost profits and additional storage costs and fees.

Defendant now moves for an order pursuant to 28 U.S.C. § 1404(a)[1] changing the venue of this action to the District of Oregon located in Portland, Oregon. For the reasons stated below, we grant the order for change of venue.

## FACTUAL BACKGROUND

Plaintiff ICEC is a Delaware corporation with its principal place of business in Purchase, New York. ICEC is in the business of importing and exporting various agricultural products and commodities for distribution to and from manufacturers and wholesalers around the country. *See* September 28, 1989 Affidavit of Robert Reynolds in Support of Motion for Change of Venue ("Reynolds Affidavit") at ¶ 3.

Defendant North Pacific is an Oregon corporation which has its principal place of business in the county of Multnomah, in the city of Portland, Oregon. North Pacific, through its various divisions, among other things, buys and sells agricultural products and commodities in the wholesale market. *Id.* at ¶ 4.

*The major facts in this case are not disputed.* In July 1988 ICEC from its White Plains office sent for inspection a packet of sample small Chinese white beans to North Pacific at its office in Portland, Oregon. The sample was identified as "Sample PC–16." *Defendant alleges that ICEC represented that these beans were of a quality sufficient to permit their importation into the United States.* Reynolds Affidavit at ¶ 5.

North Pacific issued a purchase order dated August 2, 1988[2] signed at and trans-

---

1. Section 1404 states in relevant part:
   For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

2. Plaintiff disputes that the August 2, 1988 purchase order embodies the terms of the agreement. *See* November 6, 1989 Plaintiff's Memo-

randum in Opposition to Defendant's Motion to Transfer under 28 U.S.C. § 1404(a) ("Pltf's Memo") at 3, n.* Plaintiff asserts that its sales contract dated August 4, 1988 accurately states the final, agreed-upon terms of sale, and that under Uniform Commercial Code § 2–207 the agreement extends only to those terms mutually agreed upon. *Id.*

mitted from its Portland office addressed to ICEC at its New York office ordering 200 metric tons of small Chinese white beans "as per sample no. PC–16." *Id.* Delivery was to be to Los Angeles, California. ICEC was to provide a weight certificate, quality certificate, certificate of origin and bill of lading. *Id.* Shortly thereafter on August 4, 1988 the parties changed some terms of the agreement through telephone communication. The quantity purchased was increased to 230 metric tons, the price was increased to $570 per metric ton, and the place of delivery was changed to Portland, Oregon. *Id.* Plaintiff alleges that the terms were "CANDF Liner Terms Portland Oregon." Pltf's Memo at 3.

In September 1988 the beans were shipped from Hong Kong to Portland aboard two separate ships. Plaintiff alleges that the beans were of the agreed-upon quantity and condition when placed at the disposal of two vessels in Hong Kong for shipment to Portland, Oregon. *Id.* The shipments were preceded by the documentation required by the terms of the purchase order and confirmation. Reynolds Affidavit ¶ 6. By wire transfers dated September 16, 1988 and October 25, 1988, respectively, North Pacific paid ICEC $129,190.50 for the beans, based on receipt of the required documentation. *Id.* at ¶ 7.

North Pacific claims that upon physical inspection of the beans, they discovered that the beans were of inferior quality with the presence of filth, mold and discoloration. *Id.* at ¶ 8. Defendant alleges that the beans were not of a minimum quality necessary for importation into the United States and were consequently detained in Portland, Oregon by the U.S. Food and Drug Administration ("FDA"). *Id.* Agents of the FDA conducted physical inspection and tests of the beans. Defendant alleges that upon notifying ICEC of the problem with the beans, plaintiff sent its representative, Mr. Jim Lenti, to Portland. *Id.* at ¶ 8. According to defendant Mr. Lenti agreed that the beans were of a lower quality than that evidenced by Sample PC–16. *Id.*

Meanwhile, rather than reject the shipment immediately, North Pacific sought, allegedly at ICEC's urging, to obtain FDA approval of a plan to "recondition" the beans in order to bring them up to import standards. *Id.* at ¶ 9. This plan has been unsuccessful. The government has refused to lift the detention order, and the beans have been stored in a warehouse in Portland. *Id.*

On July 3, 1989 North Pacific notified ICEC by letter that it was rejecting the shipments for failure to conform with Sample PC–16 as warranted by ICEC. *Id.* Defendant demanded repayment of the $129,190.50 purchase price, as well as interest and storage costs amounting to $8000 and increasing at the rate of $1000 per month. Pltf's Memo at 4.

## DISCUSSION

The threshold question in a motion to transfer is whether, as required by § 1404(a), the action could have been brought in the transferee forum. *See In re Air Crash Disaster at John F. Kennedy International Airport*, 479 F.Supp. 1118, 1123 (E.D.N.Y.1978). Defendant North Pacific is an Oregon corporation with its principal place of business located in Portland, Oregon. Although in its answer to the complaint North Pacific refuses to concede that this court has personal jurisdiction over it under § 302(a)(1) of New York's long-arm statute, it does agree that the District of Oregon clearly has personal jurisdiction over North Pacific. *See* October 2, 1989 Defendant's Memorandum of Law in Support of Motion for Change of Venue ("Deft's Memo for Change of Venue") at 6 n.* Thus, we conclude that this action could have been brought in the transferee forum, the federal court for the District of Oregon.

■ Section 1404(a) allows a court in its discretion to transfer a civil action to any other district where the action may have been brought when the court is satisfied that the transfer is "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Generally plaintiff's choice of forum is entitled to

great weight and should rarely be disturbed unless the balance of several factors is strongly in favor of defendant. *See Gulf Oil Corp v. Gilbert,* 330 U.S. 501, 508, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947). The burden is on the movant to show why the transfer is warranted. *See Factors Etc., Inc. v. Pro Arts, Inc.,* 579 F.2d 215, 218 (2d Cir.1978). *cert. denied,* 440 U.S. 908, 99 S.Ct. 1215, 59 L.Ed.2d 455 (1979). However, that choice should be accorded less weight to the degree that the case's operative facts have little or no connection with the transferor forum. *See Uddyback v. New Jersey Transit Rail Operations,* 629 F.Supp. 1173 (S.D.N.Y.1986).

■ The criteria weighed by a court in deciding a motion under section 1404(a) are: 1) convenience of the parties; 2) convenience of material witnesses; 3) availability of process to compel the presence of unwilling witnesses; 4) the cost of obtaining the presence of witnesses; 5) the relative ease of access to sources of proof; 6) calendar congestion; 7) where the events in issue took place; and 8) the interests of justice in general. *See Goodman v. Schmalz,* 80 F.R.D. 296, 301 (E.D.N.Y.1978) (citations omitted). The burden is on the movant to make a "clear showing" that litigation in the proposed transferee district would be more convenient and would better serve the interests of justice. *See Schneider v. Sears,* 265 F.Supp. 257, 263 (S.D.N.Y.1967). In the instant case the defendants have made such a showing.

■ Defendant North Pacific asserts that venue should be changed to Portland, Oregon because this suit arises out of a transaction which has no nexus to the state of New York. Further, it alleges that all the nonparty witnesses and physical evidence are located in or around Portland, Oregon. Thus, defendant argues that all sources of proof are within the subpoena power of the U.S. District Court for the District of Oregon. Deft's Memo at 1.

Plaintiff counters by pointing out that defendant has consented to be sued in the Southern District by registering to do business in New York, and that defendant therefore has no claim to inconvenience in litigating a lawsuit in this district. Pltf's Memo at 6–7. Further, plaintiff alleges that defendant maintains an office in New York County. *Id.* at 6.

Second, plaintiff argues that defendant's own theory of this case depends on "crucial events" which took place in the Southern District, namely the communications with ICEC's office in arranging the tender, bid and sampling of the beans and in later protesting the shipment. *Id.* at 9. It was through plaintiff's New York office that the representations as to quality were made. The purchase order was also sent there. *Id.* at 10.

Finally, plaintiff argues that the location and condition of the physical evidence is irrelevant now, since plaintiff asserts that it was responsible for the condition of the beans only at the time of placement aboard ships in Hong Kong. *Id.* at 12.

Defendant North Pacific asserts that the convenience of both the parties and that of material witnesses weigh in favor of venue in Oregon. We agree. Defendant has named six witnesses from the Portland, Oregon area or from Seattle (172 miles from Portland) and has indicated the subject of their likely testimony.[3] *See* November 15, 1989 Defendant's Reply Memorandum of Law in Further Support of Motion for Change of Venue ("Deft's Reply Memo") at 2–3. Defendants also cite the need for testimony from three other inspectors or analysts from the FDA's Seattle laboratory whose names were not available but who would be expected to testify about the tests they conducted on the samples of the beans after delivery to defendant. *Id.*

---

**3.** Two of the witnesses are employees of North Pacific who were directly involved in the transaction at issue in this case. Three of the identified witnesses are FDA inspectors/analysts who examined various samples of the beans upon delivery and performed tests on them. Defendants assert that three other unnamed inspectors/analysts also analyzed the beans and performed tests on them. Another named FDA employee is the director of compliance who can testify as to the government's detention of the beans and the reasons therefor. Deft's Reply Memo at 2.

at 3. Thus, defendants have cited nine witnesses who either reside or work in the Portland or Seattle area.

With respect to the convenience of defendant's witnesses from the FDA, plaintiff asserts that the testimony of the government inspectors from Seattle/Portland is "peripheral and cumulative." Pltf's Memo at 4. Plaintiff cannot dispute, however, that to the extent that FDA inspectors are called the balance tips in favor of Portland.

Defendant also argues that there are representatives of the Hong Kong shippers who issued the certificates of inspection which preceded the delivery of the beans to Portland. *Id.* at 4. The Hong Kong witnesses may also be of interest to the plaintiff, since plaintiff's position is that the only time the quality of the beans was relevant to this action was the moment they were delivered for shipment at a Hong Kong port, certified to the sample and released from the possession or control of plaintiff. Pltf's Memo at 13.

In contrast, plaintiff names only one witness in New York who is likely to be called upon to testify, Mr. Jim Lenti, an employee of ICEC. In addition, plaintiff refers to its employees who allegedly made statements to defendant (representations as to quality), who will provide relevant testimony. Pltf's Memo at 10. Plaintiff argues that the crucial witnesses are from Hong Kong because the condition of the beans upon their delivery to Portland is "of little import." *Id.* at 12. And since New York is only "500 air miles" farther from Hong Kong than Portland, the witnesses would not be any more inconvenienced by coming to New York. *Id.* We agree that while the added travel is slight the balance does tip slightly in favor of Portland nevertheless.

In sum, we find that with regard to the convenience of witnesses the weight of evidence is in favor of moving this case to Portland. Regardless of whether the legal issue turns on the condition of the beans in Hong Kong or their condition on arrival in Portland, in both instances the nonparty witnesses are closer to Portland than New York.

With regard to the factors of relative ease of access to sources of proof and where the events in issue took place, Portland is also more convenient than New York. The examination of the beans on arrival took place there. Information about the shipping containers and shipping conditions are more convenient to Portland. Furthermore, the beans are presently still physically located there. In contrast, the only events taking place in New York are telephone conversations and the receipt of the purchase order by ICEC. As discussed above, the content of these conversations and the documents will be important in determining the nature of the representations made regarding the quality of the beans. However, the documents should be easily obtained and plaintiff's one or two employees made available for testimony. Therefore, because more events involving more people and records relevant to this case took place in Portland than in New York,[4] we find that the balance tips in favor of Portland in considering access to sources of proof and where the events at issue took place.

With respect to the criterion of calendar congestion, there has been no argument that one forum is more or less congested than the other. Thus, on this factor the balance remains equal.

In sum, in the interest of justice and for the convenience of witnesses and access to sources of proof, we find that the balance

---

4. Plaintiff also opposes the change in venue motion on the basis that defendant has consented to be sued in the Southern District of New York by having registered to do business under § 1304 of New York's Business Corporation Law and naming an agent for service in New York County. Pltf's Memo at 1. However, we agree with defendant that consent to suit does not equate with the convenience of venue.

Even if defendant's act of registering for service of process was sufficient to confer jurisdiction, Section 1404(a) is concerned with convenience of the parties and matters of justice, not with jurisdiction or even the propriety of venue. Therefore, we do not need to rule on the question of whether this court has personal jurisdiction over the defendant.

weighs in favor of transferring this case to Portland, Oregon.

### CONCLUSION

For the above reasons, we grant defendant's motion for a change of venue and order that this case be transferred to the United States District Court for the District of Oregon.

SO ORDERED.