**In re VIATRON COMPUTER SYSTEMS CORPORATION LITIGATION.**

**No. MDL–138–T.**

United States District Court,
D. Massachusetts.

April 4, 1980.

Stephen Moulton, Moulton & Looney, Boston, Mass., for Stewart plaintiffs.

Jared Specthrie, Milberg, Weiss, Bershad & Specthrie, New York City, for Sanders plaintiffs.

George H. Lewald, William F. McCarthy, Ropes & Gray, Boston, Mass., for Arthur Andersen & Co.

Paul R. DeRensis, Powers & Hall, Boston, Mass., for Arthur D. Little, Inc.

John M. Kahn, Hill & Barlow, Boston, Mass., for Edward Bennett and Joseph Spiegel.

Robert B. Morrill, Skjerven, Morrill & Jensen, MacPherson & Drucker, San Francisco, Cal., for American Microsystems, Inc.

## MEMORANDUM

TAURO, District Judge.

There are two matters pending before this court concerning the trial of these cases. One is this court's order to show cause why the *Viatron* cases [1] should not be consolidated for trial in Boston. The other

---

1. *In re Viatron* consists of two class actions consolidated before this court by the Judicial Panel on Multidistrict Litigation for pretrial discovery. *Stewart, et al. v. Bennett, et al.*, CA 71–3022–T, is a class action filed in this court involving claims under Section 11 of the Securities Act of 1933 and Rule 10b–5 of the Securities Exchange Act of 1934 by purchasers of Viatron debentures. *Sanders, et al. v. Bennett, et al.*, 73 Civ. 780, is a class action filed in the Southern District of New York involving Rule 10b–5 claims by purchasers of Viatron common stock.

is Arthur Andersen's motion to consolidate the trials of *Stewart v. Bennett* and *Arthur Andersen & Co. v. Arthur D. Little, Inc.*, CA 80–212–T (D.Mass.). A hearing on both matters was held on March 27, 1980. This memorandum summarizes the court's reasoning which appears more completely in the transcript of that hearing. That transcript is incorporated herein by reference.

## I.

The question as to whether the *Viatron* cases should be consolidated for trial in the District of Massachusetts was first raised by this court in a show cause order on February 14, 1980. Counsel for the plaintiffs in *Sanders* and *Stewart* favor consolidation. Defendant Arthur Andersen has argued that such a consolidation would be unauthorized and inadvisable.

The first issue concerns this court's authority to transfer the *Sanders* case to this District for trial. Under the terms of the multidistrict litigation statute, 28 U.S.C. § 1407, a remand of *Sanders* to its original district of New York would appear to be appropriate, now that pretrial discovery has ceased. As Andersen concedes, however, the prevailing case authority squarely upholds the power of a multidistrict litigation transferee court to transfer a case to itself for trial. *See, e. g., Pfizer, Inc. v. Lord,* 447 F.2d 122 (2d Cir. 1971); *see* Weigel, *The Judicial Panel on Multidistrict Litigation, Transferor Courts and Transferee Courts,* 78 F.R.D. 575, 581 and nn. 42–43 (1978) (citing cases). Indeed, Rule 11(b) of the Judicial Panel expressly allows such transfers. *See In re Air Crash Disaster Near Chicago, Ill. on May 25, 1979,* 476 F.Supp. 445, 450 (Jud.Pan.Mult.Lit. 1979) (noting that most multidistrict cases are never remanded partly because of transfers

for trial ordered by transferee courts under § 1404(a)).

Andersen argues that these authorities have misconstrued the intent of Congress and have overreached the powers granted by § 1407. But this court is persuaded that the legislative history cited by Andersen does not compel a rejection of the prevailing view. As recognized by both the Second Circuit, *see Pfizer, supra,* at 124, and the Judicial Panel, *see In re Koratron,* 302 F.Supp. 239, 242 (Jud.Pan.Mult.Lit. 1969), the limitations on transfer contained in § 1407 affect only the Judicial Panel, not the transferee court. As a transferee court, this court retains the power to transfer granted to all federal district courts by 28 U.S.C. § 1404(a).[2]

Even assuming this court does have power to transfer *Sanders* to this court for trial, Andersen offers three arguments against doing so. First, Andersen contends that the added complexity of consolidation will create a serious risk of jury confusion. Second, since *Sanders* presents an unsettled question involving the application of New York statute of limitations and conflicts law, that case should be remanded for trial in New York. Third, Andersen disputes the plaintiffs' assertion that the convenience of the parties and witnesses justifies transfer.

At the March 27 hearing, this court announced its intention to try both of the *Viatron* cases in order to spare a judge in the Southern District from having to familiarize himself with the long history and complex issues of this litigation.[3] Both sides stated that they had no objection, as of now, with this court trying both cases. At issue, however, is where *Sanders* should be tried by me, and whether or not *Sanders* and *Stewart* should be consolidated or tried

---

**2.** Andersen also concedes that under prevailing authority a court may order a § 1404(a) transfer on its own motion. *See I–T–E Circuit Breaker Co. v. Becker,* 343 F.2d 361 (8th Cir. 1965). By its own terms, § 1404(a) does not require a motion by a party. This is especially significant in the light of § 1404(b), which by its terms does require some action by the parties.

**3.** In at least one instance, a transferee judge has conducted trials of cases after remand to the transferor court. In *In re Aircrash Disaster at Tenerife, Canary Islands on March 27, 1977* (M.D.L.—306), Judge Ward, after presiding over consolidated discovery in the Southern District of New York, went on to conduct trials of remanded cases in the Central and Northern Districts of California.

seriatim. Neither the potential for jury confusion nor the resolution of New York law are relevant to the choice of where this court will try the *Sanders* case. Nevertheless, because the court also stated its present inclination to have a joint trial of the *Sanders* and *Stewart* claims against Andersen, Andersen's arguments about jury confusion and New York law have been considered by me.

Andersen suggests that a trial of both section 11 and Rule 10b–5 claims will seriously prejudice its right to a fair jury trial because the differing standards of liability and damages of the two causes of action will lead to jury confusion. This problem would exist even without a consolidated trial, however, since the *Stewart* complaint alleges both section 11 and Rule 10b–5 claims. Moreover, this court is satisfied that a combination of appropriate jury instructions and carefully drafted special interrogatories will substantially reduce or eliminate the risk of jury confusion.

Andersen counters by pointing out that the *Sanders* complaint alleges facts and Rule 10b–5 liability theories not found in *Stewart*. The court is convinced, however, that the substantial factual and legal overlap in *Sanders* and *Stewart* justifies a consolidated trial.[4] Failure to consolidate, on the other hand, would waste the resources of both the parties and the court in the separate trials of largely redundant cases.

On the issue of deciding questions of New York law, the court concludes that remanding *Sanders* to New York would accomplish nothing. First, the court has already announced its intention to try the *Sanders* case for the reasons described earlier. Sitting in the Foley Square courthouse will not, by itself, aid this court's consideration of those unsettled questions. Second, any federal judge trying *Sanders* would be faced with the same task: predicting how the New York Court of Appeals will ultimately decide those questions. That task

can only be performed by resort to the public sources of information available to all courts, regardless of their jurisdiction or location. Third, the responsibility for acquainting the court with those sources remains that of the counsel who have appeared in these cases from their beginning. *See Eubank Heights Apartments, Ltd. v. Lebow*, 615 F.2d 571 at 573 (1st Cir. 1980). ("It is not our primary obligation to be acquainted with Massachusetts law; counsel owe a duty to the court") (footnote omitted).

On this issue, Andersen further argues that *Van Dusen v. Barrack*, 376 U.S. 612, 644–46, 84 S.Ct. 805, 823–24, 11 L.Ed.2d 945 (1964), requires a remand of *Sanders*. *Van Dusen* involved the application of § 1404(a) to a diversity suit involving federal courts in Pennsylvania and Massachusetts. The Court noted the desirability of having unsettled state law ruled on by a District Court in that state.

Two crucial distinctions separate this litigation from *Van Dusen*. First, these cases are not before this court on diversity. Federal law controls the underlying substantive issues. Unlike *Van Dusen*, which involved wholly state-created legal rights, these cases implicate state law only in applying an appropriate statute of limitations to the claims under Rule 10b–5. Second, even in *Van Dusen*, the Court carefully stated that

> [w]e do not suggest that elements of uncertainty in transferor state law would alone justify a denial of transfer; but we do think that the uncertainty is one factor, among others, to be considered in assessing the desirability of transfer.

*Id.* at 646, 84 S.Ct. at 824. Here, the weight of all of the relevant factors, including unsettled state law issues, favors transfer. The applicability of *Van Dusen* is further weakened by the fact that this court, sitting in New York, would still be deciding New York law even if no transfer were ordered.

---

4. Andersen's activities up through the effective date of the Viatron prospectus, for example, will lead to virtually identical proof in the two cases. *Sanders* differs from *Stewart* in this regard only in allegations that Andersen's fraudulent activity extended beyond the date of the prospectus.

Andersen argues that the convenience of the parties and witnesses does not justify the proposed transfer. The court is satisfied, however, that the balance of convenience tips toward transferring *Sanders* to Boston. Counsel for Andersen and the individual defendants are based in Boston. While the *Sanders* named plaintiffs and their counsel come from New York, they have supported transfer and consolidation. Viatron was a Massachusetts corporation audited by the Boston office of Arthur Andersen, where relevant documents and some of the auditing personnel are located. For many of the reasons supporting the initial transfer of *Sanders* to Boston for discovery, a transfer for trial makes sense in terms of convenience.

But "convenience of parties and witnesses" is only half of the statutory test under § 1404(a). Transfer also must be "in the interest of justice." Transfer and consolidation for trial serve the interest of justice by avoiding (1) overlapping trials containing duplicative proof, (2) excess costs incurred by all parties and the government, (3) the waste of valuable court time in the trial of repetitive claims, and (4) the burden placed either on a new judge in gaining familiarity with the cases, or on this court in relocating in New York.

For all of these reasons, the transfer of *Sanders* to this court for a joint trial with *Stewart* in Boston is both proper and prudent.

## II.

Andersen's motion to consolidate its action against Arthur D. Little (ADL) with the *Viatron* trial raises in a new form the same issues addressed by this court when it denied Andersen's motion to implead ADL in the *Viatron* litigation. In a memorandum and order issued on January 18, 1980, this court explained its reasons for that denial. Since then, Andersen has pursued two strategies for achieving its goal. It has filed a separate complaint against ADL and moved to consolidate that action with *Viatron*.[5] It has also petitioned the Court of Appeals for a writ of mandamus compelling this court to grant Andersen leave to file a claim against ADL in the *Viatron* litigation.

Given this procedural context, the court gave Andersen an opportunity to argue its motion to consolidate at the March 27 hearing. After Andersen's presentation, the court reaffirmed its earlier position by announcing its intention to deny the motion. Without retracting the January 18 memorandum, the court will take this opportunity to specify some of the complications that would arise if Andersen's third party action were consolidated with the trials of the *Sanders* and *Stewart* claims against Andersen.

A principal claim against Andersen is that it failed to act on knowledge or notice of facts that would indicate that Viatron was not a viable enterprise. One defense to this claim will be that Andersen justifiably relied on ADL's expert analysis of Viatron's viability in a report prepared by ADL and made available to Andersen personnel prior to their certification of Viatron's financial statements. In litigating that defense, the parties will concentrate on what Andersen knew or should have known with respect to the reliability of ADL's report.

If ADL were brought in as a third party for the purpose of determining the relative liability, if any, of Andersen and ADL, an entirely new set of factual issues would be introduced. Andersen would then seek to show that ADL improperly prepared its report. That effort would in turn cause ADL to seek to show that any flaws in its report were due to misleading statements made by the companies which supplied Viatron with metal oxide semiconductor chips—a critical component in Viatron's plans to market a low cost office computer system. Those companies were defendants in *Viatron*, but settled out in December, 1979.

---

**5.** Andersen's complaint seeks indemnity and contribution for any liability it incurs in *Viatron*.

The effect of allowing the motion to consolidate, therefore, would be to nullify the simplification and narrowing of the issues for trial achieved through settlement negotiations last winter. It would also nullify the effect of this court's order severing American Microsystems Inc., the remaining supplier defendant, from the plaintiffs' claims against Andersen. The jury would be forced to evaluate the relative liabilities of companies which are no longer parties to this litigation and which stood twice removed from Andersen's role in the Viatron financing. Consolidation of Andersen's case against ADL with the consolidated *Sanders* and *Stewart* cases would make this already complicated litigation too complex for effective judicial administration.

### III.

These decisions represent this court's best judgment as to how these complicated securities class actions should be tried. In accordance with the suggestions made in the Manual for Complex Litigation, the court has attempted to arrange this litigation into digestible bites through lengthy but productive settlement conferences, as well as a considered application of its severance and consolidation powers. *See* 1 *Moore's Federal Practice, Manual for Complex Litigation* ¶ 4.11–.12. This court's purpose has been to simplify the issues for the principal liability trial in order to facilitate fair consideration by the jury, while keeping to a minimum the waste of litigative and judicial resources created by duplicative trials.