Joseph DISPENZA, Individually and as Administrator of the Estates of Connie Dispenza and Tina Dispenza and as Natural Tutor of his minor child Sandy Dispenza, Plaintiff,

v.

EASTERN AIR LINES, INC., The Boeing Company, Collins Radio, Inc. and United States Aviation Underwriters, Inc. and/or United States Aviation Insurance Group, Inc., Defendants.

EASTERN AIR LINES, INC., Third-Party Plaintiff,

v.

UNITED STATES of America, Third-Party Defendant.

Peter Joseph CALDARERA, Jr., Individually and as Tutor of and on behalf of the Minor Christopher Moore Caldarera, Plaintiff,

v.

EASTERN AIR LINES, INC., The Boeing Company, and United States of America, Defendants.

EASTERN AIR LINES, INC., Third-Party Plaintiff,

v.

UNITED STATES of America, Third-Party Defendant.

Edgar A.G. BRIGHT, Jr., Individually and as Executor of the Successions of Mrs. Ethel Fox Bright and Edgar A.G. Bright, Plaintiff,

v.

EASTERN AIR LINES, INC., Eugene S. Eberhart, as Administrator of the Estate of W.S. Eberhart, Mrs. Charlotte E. Kleven, as Administratrix of the Estate of J.W. Kleven, The Boeing Company and United States Aviation Underwriters, Inc., Managers/United States Aircraft Insurance Group, Defendants.

EASTERN AIR LINES, INC.,
Third-Party Plaintiff,

v.

UNITED STATES of America,
Third-Party Defendant.

Maunsel W. HICKEY, Individually and as Executor of the Succession of Mrs. Jane Bright Hickey, Harold H. White, III, and Michael B. White, Plaintiffs,

v.

EASTERN AIR LINES, INC., Eugene S. Eberhart, as Administrator of the Estate of W.S. Eberhart, Mrs. Charlotte E. Kleven, as Administratrix of the Estate of J.W. Kleven, The Boeing Company, United States Aviation Underwriters, Inc., Managers/United States Aircraft Insurance Group, and United States of America, Defendants.

EASTERN AIR LINES, INC.,
Third-Party Plaintiff,

v.

UNITED STATES of America,
Third-Party Defendant.

Harold H. STREAM, II, and Matilda Gray Stream, Plaintiffs,

v.

EASTERN AIR LINES, INC., The Boeing Company, and United States of America, Defendants.

EASTERN AIR LINES, INC.,
Third-Party Plaintiff,

v.

UNITED STATES of America,
Third-Party Defendant.

Nell B. NOLAND, Iveson B. Noland, III, Daniel W. Noland and John B. Noland, Individually and as Executor of Succession of Iveson B. Noland, Plaintiffs,

v.

EASTERN AIR LINES, INC., The Boeing Company, United States Aviation Underwriters, Inc., Managers/United States Aircraft Insurance Group, and United States of America, Defendants.

EASTERN AIR LINES, INC.,
Third-Party Plaintiff,

v.

UNITED STATES of America,
Third-Party Defendant.

Nos. 76 C 236, 76 C 461, 76 C 572, 76 C 573, 76 C 711 and 76 C 736.
MDL 227.

United States District Court,
E. D. New York.

Feb. 12, 1981.

Kierr, Gainsburgh, Benjamin, Fallon & Lewis by Jack C. Benjamin, New Orleans, La., for plaintiffs Dispenza, Bright, Hickey and Noland.

Healy & Baillie by Walter I. Skinner, New York City, for plaintiffs Caldarera and Stream.

Haight, Gardner, Poor & Havens by Walter E. Rutherford and Alan D. Reitzfeld, New York City, for defendant Eastern Air Lines, Inc.

BRAMWELL, District Judge.

Upon its return to this Court from its interlocutory journey to the United States Court of Appeals for the Second Circuit, the multidistrict litigation that arose from the tragic crash of Eastern Air Lines flight # 66 on June 24, 1975 once again has become the source of numerous motions and cross motions. The activity presently before this Court evolves from motions made by the instant plaintiffs (hereinafter referred to as "the Louisiana plaintiffs") who originally commenced their actions in Louisiana district courts.[1]

---

1. The *Dispenza, Caldarera, Bright, Hickey* and *Stream* actions originally were filed in the United States District Court for the Eastern District of Louisiana. The *Noland* action was com-

Through the combined efforts of the Judicial Panel on Multidistrict Litigation, *see In re Air Crash at John F. Kennedy Int'l Airport on June 24, 1975,* 407 F.Supp. 244 (Jud.Pan.Mult.Lit.1976), and this Court, these cases previously were transferred to this Court for a consolidated trial on the issue of liability.[2] At this trial, a jury found Eastern liable for the crash of flight # 66.[3] This finding was affirmed on appeal. *In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975,* 635 F.2d 67, at 77 (2d Cir. 1980). With the instant motions, the Louisiana plaintiffs urge that all further proceedings in their cases be conducted in their original forums.

Specifically, the plaintiffs contend that an order of this Court dated December 15, 1977,[4] and 28 U.S.C. § 1404(a) (1976) should be the guide for the disposition of their transfer motions. This assertion is correct. As this Court noted in *In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975,* 479 F.Supp. 1118 (E.D.N.Y.1978), the December 15, 1977 entry, which expressed this Court's willingness to entertain requests by Louisiana plaintiffs for return of their actions to Louisiana for damage trials,[5] implicitly reflected this Court's intention to implement 28 U.S.C. § 1404(a) (1976) as the guide for such motions. See 479 F.Supp. at 1121–23.

28 U.S.C. § 1404(a) (1976) provides:

For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought.

In light of this statute, it is noteworthy in the cases at bar that all plaintiffs involved reside in the districts to which they seek a transfer,[6] and that the business records of the plaintiffs and their decedents are located in Louisiana.[7] Similarly, most damage witnesses reside in Louisiana.[8]

In accordance with 28 U.S.C. § 1404(a) (1976), it also is abundantly clear that the actions of the Louisiana plaintiffs are cases that "might have been brought" in a Louisiana forum. In fact, the requested transferee forums represent the plaintiffs' original choice of forum.[9] With respect to defendant Eastern, a basis for in personam jurisdiction and venue exists in Louisiana, since Eastern does business in Louisiana and has been served with process there.[10] Accordingly, this Court concludes that the convenience of parties and witnesses and the interests of justice command that the cases at bar be transferred to the districts

---

menced in the United States District Court for the Middle District of Louisiana.

**2.** Such a transfer was effectuated through an Order of this Court dated December 15, 1977, which

ORDERED that all passenger actions commenced in any other Court and transferred to this Court for pretrial purposes only by the Judicial Panel on Multi-District Litigation pursuant to 28 USCA Section 1407 are hereby transferred to this Court pursuant to 28 USC Section 1404(a) and consolidated for liability trial, and subsequent to final judgment any party in each such case may move in this Court for an order transferring the action to the District where it was originally commenced for a damage trial.

**3.** On the eve of trial, Eastern's co-defendant, the United States of America, although not admitting any negligence, consented to the entry of liability judgments against it in all passenger cases.

**4.** *See* note 2 *supra.*

**5.** *Id.*

**6.** *Dispenza* Complaint ¶ 2; *Caldarera* Complaint ¶ 4; *Bright* Second Amended Complaint ¶ 1; *Hickey* Second Amended Complaint ¶ 1; *Stream* Complaint ¶ 4; *Noland* Complaint ¶ 1.

**7.** This fact is amply reflected in the motion papers submitted by the Louisiana plaintiffs in support of the instant motion and in connection with prior motions to remand. The prior motions are discussed in *In re Air Crash Disaster at John F. Kennedy Int'l Airport on June 24, 1975,* 479 F.Supp. 1118 (E.D.N.Y.1978).

**8.** *Id.* at 1123.

**9.** *See* note 1 *supra.*

**10.** Eastern has admitted these facts in its answers to the complaints of the Louisiana plaintiffs.

in Louisiana in which they were commenced.

Indeed, in December of 1978, this Court issued a similar ruling in the *Hickey, Bright, Noland, Caldarera* and *Stream* cases. 479 F.Supp. 1121–23. These rulings were stayed, however, in anticipation of Eastern's multifaceted interlocutory appeals. All of those appeals now have been decided. And, in one such decision, the Second Circuit expressed its view that the transfers to Louisiana granted by this Court "would be permissible, as well as desirable, when the only issue remaining to be resolved concerns the amount of awardable damages." *Winbourne v. Eastern Air Lines, Inc.*, 632 F.2d 219, 227 (2d Cir. 1980).[11]

Defendant Eastern has seized upon the final clause of this expression of the appellate court, and has transformed it into the cornerstone of its opposition to the plaintiffs' motions. Thus, Eastern has asked this Court to observe that issues regarding the capacity to sue of the Louisiana plaintiffs or their representatives, the status of the cases sought to be transferred that are covered by the Warsaw Convention and the Montreal Agreement and the liability of Eastern's alleged insurers remain unresolved in the cases in which motions to transfer have been filed. Characterizing these issues as relating to "liability" and, therefore, within the sole province of this Court, Eastern contends that a transfer of the cases in which these issues remain outstanding would be improper at this time.

### 1. *Capacity to Sue*

■ In all of the cases sought to be transferred, Eastern has cross moved to dismiss the claims brought by the plaintiffs in their individual capacity. This request is predicated under New York's wrongful death law.[12] In the alternative, Eastern's cross motions seek a dismissal of claims brought by Louisiana plaintiffs in their capacity as personal representatives of the decedents under the appropriate provisions of Louisiana law.[13] Implicit in such cross motions is Eastern's request for a determination by this Court of the law governing the capacity to sue issue prior to any transfer of the actions of the Louisiana plaintiffs.

With respect to capacity to sue, however, this Court is of the belief that the principles of convenience underlying 28 U.S.C. § 1404(a) (1976) would best be furthered if, in the cases sought to be transferred, *determination* of the capacity to sue issue, as well as the issue of damages, were made by a fact finder sitting in the judicial districts in Louisiana where the actions initially were brought. Indeed, all of the parties and proffered representatives subject to Eastern's capacity to sue attack are Louisiana residents[14], and all records relevant to such attacks are situated in Louisiana.[15] Thus, as Mr. Sincoff stated at the January 16, 1981 status conference in this multidistrict litigation:

> in the cases where there is a defense of capacity to sue [the plaintiffs], at the

---

**11.** In so ruling, the Second Circuit recognized that

> decisions relative to transfer of cases are best reserved for the district court below. That court is in the best position to determine the risk of inconsistent results, the prospect for swift resolution of this litigation, the hardship to the respective parties in each case that a transfer would entail, and the myriad other relevant factors which must be assessed in determining whether to transfer or to retain a particular case. We are confident that the parties on remand will bring such factors to the attention of the district court, and that, armed with such information, the court below can arrive at its decision without any further guidance from us.

*Winbourne v. Eastern Air Lines, Inc.*, 632 F.2d at 227.

**12.** Under N.Y. EPTL § 5–4.1, only the personal representative of a decedent may maintain an action for wrongful death. *See Carrick v. Central General Hospital*, 51 N.Y.2d 242, 414 N.E.2d 632, 434 N.Y.S.2d 130 (1980).

**13.** Under La.Civ.Code Ann. Art. 2315, an action to recover damages for wrongful death can be maintained only by a decedent's next of kin in an individual capacity, and not by a decedent's personal representative.

**14.** *See* note 6 *supra*.

**15.** *See* notes 7 and 8 *supra*.

time of trial, would put the representative of the estate on the stand to testify on the issue of capacity to sue during the damage trial, and that would be the proof [the plaintiffs] would be submitting for the Court to make a decision of law as to whether that individual had capacity to sue. But it would occur during the damage trial.

*Transcript of January 16, 1981 conference in MDL 227* at 13. At the January 16 conference, this Court intimated that it approved of such a procedure, *id.* at 14; it now so rules.

■ Since implementation of this procedure would vest the determination of Eastern's capacity to sue defenses with Louisiana district courts, this Court deems it unwise to accede to Eastern's instant request to choose the law that will govern such an issue. To so rule possibly would interfere with the manner in which the Louisiana courts operate with respect to the capacity to sue issue, and would run counter to principles of comity. *See Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964). Accordingly, disposition of Eastern's cross motions regarding choice of law on the issue of capacity to sue of the Louisiana plaintiffs is deferred to the Louisiana district court that entertains further proceedings in the actions involving the instant Louisiana plaintiffs.[16]

### 2. The Warsaw-Montreal Cases

■ In *Winbourne v. Eastern Air Lines, Inc.*, 632 F.2d 219 (2d Cir. 1980), the Second Circuit reversed this Court's grant of summary judgment as against Eastern in the multidistrict litigation covered by the Warsaw/Montreal agreement.[17] This reversal, based solely on procedural grounds,[18] *see* 632 F.2d at 225–25, returned these cases, "at least procedurally . . . to a pretrial pos-

**16.** Eastern argues that such a deferral of choice of law with respect to capacity to sue could give rise to inconsistent results among the separate Louisiana district courts before whom the issue will be raised. *See* note 1 *supra*. The relevant guides on the choice of law issue, however, seem to dispel this argument. They all appear to lead in one direction. In *Van Dusen v. Barrack*, 376 U.S. 612, 84 S.Ct. 805, 11 L.Ed.2d 945 (1964), for example, the United States Supreme Court held that a change of venue under 28 U.S.C. § 1404(a) results only in a change of courtrooms and *not* a change of law from that which would be applied in the case's *original* forum. *Id.* at 639, 84 S.Ct. at 820.

Also of note is Fed.R.Civ.P. 17(b), which provides, in relevant part:

The capacity of an individual, other than one acting in a representative capacity, to sue or be sued shall be determined by the law of his domicile. The capacity of a cooperation to sue or be sued shall be determined by the law under which it was organized. In all other cases capacity to sue or be sued shall be determined by the law of the state in which the district court is held. . . .

Reading this rule in conjunction with its holding in *Van Dusen*, the Supreme Court observed:

Since in this case the transferee district court must under § 1404(a) apply the laws of the State of the transferor district court, it follows in our view that Rule 17(b) must be interpreted similarly so that the capacity to sue will also be governed by the laws of the transferor State. Where a § 1404(a) transfer is thus held not to effect a change of law but essentially only to authorize a change of courtrooms, the reference in Rule 17(b) to the law of the State "in which the district court is held" should be applied in a corresponding manner so that it will refer to the district court which sits in the State that will generally be the source of applicable laws.

376 U.S. at 642–43, 84 S.Ct. at 822–23.

**17.** For those plaintiffs found to be engaged in international transportation, the interlocking provisions of the Warsaw Convention and the Montreal Agreement impose liability upon air carriers for injury to such plaintiffs "if the accident which caused the damage. . . . took place on board the aircraft or in the course of any operations of embarking or disembarking." *Supp. to* 49 U.S.C. § 1502 (1976); Article 17. Damages deriving from such an accident, however, are limited under Warsaw/Montreal to $75,000. *Day v. Trans World Airlines, Inc.*, 528 F.2d 31 (2d Cir. 1975), *cert. denied*, 429 U.S. 890, 97 S.Ct. 246, 50 L.Ed.2d 172 (1976). For a detailed discussion of the evolution of the Warsaw/Montreal pact, *see Winbourne v. Eastern Air Lines, Inc.*, 479 F.Supp. at 1139–41.

**18.** The Second Circuit's ruling derived from this Court's failure to afford Eastern 10 days to respond in writing to the summary judgment motions made by the Warsaw/Montreal plaintiffs. *See* Fed.R.Civ.P. 56(c). Said motions were granted in open court on the day they were interposed. *See generally Winbourne v. Eastern Air Lines, Inc.*, 632 F.2d at 222–25.

ture." *Id.* at 225. In response to the instant motion, Eastern contends that this fact forecloses the possibility of an immediate transfer of the *Bright* and *Hickey* actions that are covered by Warsaw/Montreal.

The present status of these cases, however, must be viewed in a practical light. Eastern's liability in such actions now has been established under Warsaw/Montreal,[19] see 479 F.Supp. at 1141, and by virtue of the doctrine of collateral estoppel since, in the non Warsaw/Montreal cases, Eastern has been found liable for the June 24, 1975 air crash after a trial by jury. *See Parklane Hosiery Co., Inc. v. Shore*, 439 U.S. 322, 99 S.Ct. 645, 58 L.Ed.2d 552 (1979); *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 91 S.Ct. 1434, 28 L.Ed.2d 788 (1971). Thus, the entry of a judgment depicting this liability would be but a mere formality.[20]

Standing in the way of the entry of a complete judgment in the plaintiffs' favor, however, is Eastern's capacity to sue affirmative defense. As the Second Circuit stated in the *Winbourne* appeal:

> Numerous cases have established the proposition that a plaintiff's capacity to sue must first be resolved before a court may enter judgment in his favor. *See, e. g., Blackmar v. Lichtenstein*, 578 F.2d 1273, 1276 (8th Cir. 1978); *Brown v. Keller*, 274 F.2d 779, 780 (6th Cir.), *cert. denied*, 363 U.S. 828, 80 S.Ct. 1599, 4 L.Ed.2d 1523 (1960). Lack of authorization to bring suit, which would deprive a plaintiff of the requisite standing to maintain the action, likewise precludes a plaintiff from obtaining a judgment.

632 F.2d at 224. In view of this legal proposition, this Court's ruling that the determination of Eastern's capacity to sue defenses in the Louisiana plaintiffs' actions is to be made by a Louisiana district court renders this Court unable to enter a complete judgment in the plaintiffs' favor.[21]

In contrast, once the Louisiana Court resolves the capacity to sue issue, it will be in the perfect position to implement the provisions of the Warsaw/Montreal agreement so as to fashion an appropriate judgment in the cases governed by said agreement. Accordingly, this Court concludes that the fact that the Warsaw/Montreal cases are not presently the subject of liability judgments does not preclude the immediate transfer of the *Bright* and *Hickey* cases to the districts in Louisiana in which they were brought. This conclusion firmly expresses this Court's belief that acceptance of Eastern's request not to so rule would engage this Court in an unwarranted elevation of form over substance.

### 3. *Liability of Insurers*

In the *Dispenza, Bright, Hickey* and *Noland* cases, Eastern also has contended in response to the motions to transfer that the unresolved liability status of defendants United States Aviation Underwriters, Inc. and United States Aviation Insurance Group ("USAIG") preclude the requested transfers. The presence of these defendants in the complaints of the six plaintiffs mentioned above is a manifestation of LSA Rev.Stat. 22:655, the Louisiana statute that permits a direct action against a liability insurer.[22]

---

19. *See* note 17 *supra.*

20. *See* 632 F.2d at 224–25; 479 F.Supp. at 1141–47.

21. To alleviate this situation, the Second Circuit suggested "that on remand plaintiffs in [the Warsaw/Montreal] cases make a proper motion to the district court to enter an order accomplishing the removal of Eastern's liability to the decedents (as distinguished from the particular plaintiffs) from the set of contested issues to be resolved at trial." 632 F.2d at 225. For various reasons, the plaintiffs chose not to

proceed in this fashion. *See Transcript of January 16, 1981 conference in MDL 227* at 12–15.

22. LSA Rev.Stat. 22:655 provides, in relevant part:

> ... The injured person or his or her survivors or heirs hereinabove referred to, at their option, shall have a right of direct action against the insurer within the terms and limits of the policy; and such action may be brought against both the insured and insurer jointly and in solido, in the parish in which the accident or injury occurred or in the parish in which an action could be brought

Through a letter authored by their attorney, however, the plaintiffs involved in these cases have agreed to dismiss their claims against United States Aviation Underwriters, Inc. and USAIG.[23] In the opinion of this Court, these dismissals effectively undermine Eastern's opposition to the transfer of these cases to Louisiana stemming from the pendency of such claims. Nevertheless, United States Aviation Underwriters, Inc. and USAIG take the position that such dismissals do not adequately address the summary judgment cross motions they interposed in response to the Louisiana plaintiffs' transfer motions. In essence, these cross motions ask this Court to rule that Louisiana's direct action statute cannot be applied to *any* claim against an insurer of Eastern for damages incurred as a result of the crash of flight # 66 on June 24, 1975.[24]

■ Under Louisiana law, however, the direct action statute "is remedial in character, rather than substantive, and [as such] does not create causes of actions." *Finn v. Emp. Liab. Ass. Corp.*, 141 So.2d 852, 864 (La.App.1962). *See also Noble v. Employers Ins. of Warsaw*, 555 F.2d 1257 (5th Cir. 1977); *Olympic Towing Corp. v. Nebel Towing Co.*, 419 F.2d 230 (5th Cir. 1969); *Mock v. Maryland Casualty Co.*, 6 So.2d 199 (La.App.1942). *See generally Noe v. United States Fidelity and Guaranty Co.*, 406 S.W.2d 666 (Mo.1966). Thus, within the bifurcated motif of this multidistrict litigation, it is this Court's opinion that the proper forum for claims deriving from such a "remedial" statute, including motions attacking the validity of any and all such claims, is the forum that conducts the trial on damages. As an earlier portion of this Decision makes clear, this Court is of the belief that such a forum in the cases at bar should be a Louisiana district court.

Having held that a transfer of the cases at bar is commanded by 28 U.S.C. § 1404(a) (1976), and having set aside Eastern's opposition to said transfers, this Court hereby rules that the *Dispenza, Caldarera, Bright, Hickey, Stream* and *Noland* actions are to be transferred forthwith to the Louisiana districts in which they were commenced for all further proceedings.

---

against either the insured or the insurer under the general rules of venue prescribed by Art. 42, Code of Civil Procedure. This right of direct action shall exist whether the policy of insurance sued upon was written or delivered in the State of Louisiana or not and whether or not such policy contains a provision forbidding such direct action, provided the accident or injury occurred within the State of Louisiana.

23. According to the February 6, 1981 letter of Jack C. Benjamin, these dismissals will be without prejudice and

with the understanding, of course, that should they desire to substitute, in the appropriate cases, the actual liability insurers of Eastern Air Lines, Inc., in place of United States Aviation Underwriters, Inc., and United States Aircraft Insurance Group, by amended complaint, they may be free to do so, subject to any defenses which the potential defendants may urge.

24. This argument is predicated on the contention that the claims arising from the crash of Eastern flight # 66 do not satisfy LSA Rev. Stat. 22:655's requirement that the accident or injury at issue occur in Louisiana. *See Esteve v. Allstate Insurance Co.*, 351 So.2d 117 (La. Sup.Ct.1977).