720 F.Supp. 1455 (1988)
In re AIR CRASH DISASTER AT STAPLETON INTERNATIONAL AIRPORT, DENVER, COLORADO, ON NOVEMBER 15, 1987.
Hugh FORD and Julia Ford
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Brenda A. SELLEH and J. Mark Selleh
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Diane Mae McELHENEY and Gary McElheney
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Libby SMOOT
v.
CONTINENTAL AIRLINES CORP.
Kathleen A. COOPER and Dale Cooper, wife and husband
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Karen Svea JOHNSON and Robert Cooke, Jr., wife and husband
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Shirley Jean WELTZ and Marvin Richard Weltz, wife and husband
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Christopher DAVIS, a minor, by Jerry DAVIS and Linda Davis, and Jerry Davis, individually
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Angela TLUCEK, a minor, by Jerry TLUCEK and Mary Lou Tlucek, and Jerry Tlucek and Mary Lou Tlucek, individually
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Wayne DAVIS
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
David DANIEL
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Robert O. LINCK and Joanne Linck, his wife
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Deborah PASCHKOV, for herself, and as guardian ad litem for Melissa Richard
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Patti L. HALFORD and Donald M. Halford
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Jeffrey HOAGLAND, a minor, by Mark W. HOAGLAND and Marie Hoagland
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
Ann C. STEWART, for John McCabe STEWART, a minor, Donald Douglas Stewart, Lueann Stewart, and Linda Butterfield, widow
v.
CONTINENTAL AIRLINES CORP., Texas Air Corp.
Keith SMITH and Loretta Smith
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp.
v.
Byron OWENS (subject to realignment).
Michael SPICER
v.
CONTINENTAL AIRLINES CORP.
Douglas SELF and Debbie Self
v.
CONTINENTAL AIRLINES CORP. and Texas Air Corp., jointly and severally.
MDL No. 751, Nos. 87-F-1922, 88-F-346, 88-F-348, 88-F-661, 88-F-663 to 88-F-665, 88-F-667, 88-F-668, 88-F-670, 88-F-671, 88-F-787, 88-F-830 to 88-F-832, 88-F-898, 88-F-990, 88-F-991 and 88-F-1358.
United States District Court, D. Colorado.
November 29, 1988.
Motion to Correct December 2, 1988.
On Motion to Correct Order MDL 751-16 December 2, 1988.

*1457 ORDER MDL 751-17
MEMORANDUM OPINION AND ORDER ON TRANSFER, CONSOLIDATION, AND TRIAL PROCEDURE
SHERMAN G. FINESILVER, Chief Judge.
This multidistrict action deals with damages claimed as a result of injuries and fatalities incurred in an airplane crash in Denver, Colorado on November 15, 1987. The instant matter involves the parties' joint motion to transfer the cases to the District of Colorado for resolution of the issues of liability for compensatory and punitive damages through an exemplar trial and consolidation of several cases.
The just and efficient resolution of this multidistrict litigation will be served by a trial plan which consolidates all cases in the District of Colorado for resolution of common issues. By this order, we transfer the above referenced cases to the District of Colorado pursuant to 28 U.S.C. § 1404(a). Common law tort liability and punitive damages issues are bifurcated from compensatory damage issues.[1] Issues of liability and punitive damages in all cases are consolidated pursuant to Rule 42(a) for resolution through an exemplar trial. Resolution of these issues will proceed through trial of liability, compensatory damage claims and punitive damages in two cases. The case of Karen Svea Johnson, et al. v. Continental Airlines Corp., D.Colo. Case No. 88-F-664 (D.Idaho Case No. Civ. 88-1075), is consolidated for trial of certain issues with the case of Hugh F. Ford, et al. v. Continental Airlines Corp. et al., D.Colo. Case No. 87-F-1922, pursuant Rule 42(a) of the Federal Rules of Civil Procedure. The consolidated Ford/Johnson case will serve as the exemplar trial.

I.
The court has jurisdiction over these civil actions pursuant to 28 U.S.C. § 1332, diversity of citizenship. On April 14, 1988, the Judicial Panel on Multidistrict Litigation *1458 conferred jurisdiction upon this court for consolidated pretrial proceedings pursuant to 28 U.S.C. § 1407. In re Air Crash Disaster at Stapleton Int'l Airport, 683 F.Supp. 266 (J.P.M.L.1988). A transferee court presiding over diversity actions consolidated as multidistrict litigation has the power under 28 U.S.C. § 1404(a) to transfer actions in its charge to itself for all purposes if such transfer satisfies the criteria set out in that statute. In re Fine Paper Antitrust Litigation, 685 F.2d 810, 820 (3d Cir.1982); Pfizer, Inc. v. Lord, 447 F.2d 122, 124-25 (2d Cir.1971); In re Longhorn Securities Litigation, 573 F.Supp. 274, 276 (W.D.Ok.1983); In re 1980 Decennial Census Adjustment Litigation, 506 F.Supp. 648, 650-51 (J.P.M.L.1981); Weigel, The Judicial Panel On Multidistrict Litigation, Transferor Courts and Transferee Courts, 78 F.R.D. 575, 581 and nn. 42-44 (1978) (and all cases cited therein); see also Rule 11(b) of the Rules of Procedure of the Judicial Panel on Multidistrict Litigation; Manual for Complex Litigation, Second, §§ 31.12 n. 8, 31.122 (1985).
To effectuate transfer, 28 U.S.C. § 1404(a) requires (1) that the action could have been brought in the transferee court, and (2) that the transfer will serve the convenience of the parties, the convenience of non-party witnesses, and the interests of justice.
Venue is proper in the District of Colorado. Defendants do business in the state, and the claims arise out of an air crash in Colorado. 28 U.S.C. § 1391(a) & (c).
Rule 1 of the Federal Rules of Civil Procedure requires the court to apply the Rules to obtain the "just, speedy, and efficient" resolution of disputes. This objective broadens our view of convenience to the parties in this multidistrict litigation. In re Dow Co. Sarabond Products Liability Litigation, 664 F.Supp. 1403, 1404 (D.Colo.1987). When considering transfer and consolidation for resolution of common issues, the court must consider the overall convenience of all of the parties and witnesses rather than the convenience of each individual involved in the cases. In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions, 333 F.Supp. 299, 304 (S.D.N.Y.1971). Transfer to the District of Colorado serves the convenience of the witnesses and the parties as well as the interests of justice. Among significant factors are: (1) joint motion of the parties to transfer the litigation to this district; (2) location of the document depository at the University of Denver, College of Law; (3) parties' assertions at the November 2, 1988 Status Conference that ninety (90) to one-hundred (100) percent of the liability witnesses and evidence are identical for each case; (4) a large number of the non-party liability witnesses to this action reside and are employed in Denver, Colorado; (5) counsel designated to try the exemplar case reside in Colorado; and (6) the liability phase of this litigation involves issues familiar to this court. Judicial efficiency and the interests of the parties in speedy resolution of the issues is not served by remanding these cases to their originating districts at this time. See In re Fine Paper Antitrust Litigation, 685 F.2d 810, 820 & n. 7 (3d Cir.1982); Pfizer, Inc. v. Lord, 447 F.2d 122, 125 (2d Cir.1971). Sound and fair case management argues against that course of action.
Accordingly, all cases pending in this court pursuant to the conditional transfer order of the Judicial Panel on Multidistrict Litigation are transferred to the District of Colorado pursuant to 28 U.S.C. § 1404(a).

II.
Upon determination of common issues, cases transferred to the District of Colorado by this order will be retransferred to the districts in which they originated. The approach outlined herein is appropriate for determination of liability issues in air crash cases where all plaintiffs were allegedly injured by a single set of acts. Winbourne v. Eastern Airlines, Inc., 632 F.2d 219, 227 (2d Cir.1980); see, e.g., Dispenza v. Eastern Airlines, Inc., 508 F.Supp. 239, 242 (E.D.N.Y.1981); In re Multidistrict Civil Actions Involving Air Crash Disaster Near Hanover, N.H., 314 F.Supp. 62, 63 n. 1 (J.P.M.L.1970).
A court may bifurcate issues for trial to different juries where the practice *1459 is designed to avoid prejudice and to further convenient, expeditious and economical resolution of the issues. Fed.R.Civ.P. 42(b). Similarly, when common questions of law or fact are pending before the court, those issue may be consolidated to serve the same interests. In air crash litigation, bifurcation of liability issues from compensatory damages serves these interests without giving rise to constitutional, procedural, or practical difficulties. Martin v. Bell Helicopter Co., 85 F.R.D. 654, 657-61 (D.Colo.1980) (analyzing various issues); see also Dispenza v. Eastern Airlines, Inc., 508 F.Supp. 239, 242 (E.D.N.Y.1981); Manual for Complex Litigation, Second, §§ 33.23, 33.26 (1985). Bifurcation of damages issues from liability issues is appropriate because (1) issues are substantially separate and distinct; (2) bifurcation reduces the burden of preparation for trial on damage issues if such a determination proves unnecessary; (3) separate determination of liability may resolve various issues frustrating settlement of the cases and prevent the need for damage trials; and (4) bifurcation permits the efficient consolidation of identical issues for resolution at one time. Martin, 85 F.R.D. at 658-59; cf. In re Air Crash at Dallas/Fort Worth Airport on August 2, 1985, slip op., MDL 657 (N.D. Tex. June 13, 1988) (value of determining certain issues at separate trial before proceeding with costly litigation of all issues). Consolidation of liability and punitive damage issues avoids the potential that disparate liability verdicts will be imposed on defendants Continental and Texas Air for the same conduct.[2] The liability phases of individual trials would involve identical evidence and standards of conduct.[3]
Issues of liability and damages are bifurcated pursuant to Rule 42(b). Common issues of liability and punitive damages are consolidated for an exemplar trial pursuant to Rule 42(a).

III.
The Ford and Johnson cases herein transferred to the District of Colorado constitute the exemplar trial. These cases are consolidated on issues of liability, compensatory damages, and punitive damages for trial pursuant to Rule 42(a).
By way of background, the parties have jointly moved for consolidated issues of liability to be determined during an exemplar trial. In response to an order of the court, the parties each submitted proposed exemplar cases. Defendants offered a list of cases they believed were ready for trial. They contend that the Ford case was the most appropriate because it was the first filed and involved the straight forward damage issues. Plaintiffs suggested the Johnson case. They argue that this case will also be ready for trial and will serve the same purposes.
At the Status Conference November 2, 1988 the court raised the possibility of a consolidated exemplar case to resolve the dispute. Since the Status Conference, plaintiffs have submitted detailed outlines of the evidence and damage witnesses they intend to present in regard to each case. Defendants have since attempted to demonstrate that completion of discovery in the Johnson case in time for a December 12, 1988 trial is an undue burden imposed on them at the design of plaintiffs. More recently, defendants filed a motion to strike certain witnesses in the Ford case, contending that these witnesses would not be deposed in time for trial.
The goals of the concept of an exemplar case and Rule 1 of the Federal Rules of Civil Procedure are best served by consolidated trial of the Ford and Johnson cases. Defendants' principal objections to the Johnson case go to trial preparation and case management. At no time have defendants *1460 argued that consolidation of the cases would prejudice their ability to present a defense at trial. At the November 2, 1988 Status Conference, plaintiffs advised the court that most of their primary damage witnesses had been deposed, that remaining depositions could be conducted in a timely manner, and that they would strike any secondary witnesses who could not be adequately deposed prior to trial. Pleadings filed with the court demonstrate that preparation of both discovery and trial depositions is proceeding according to the parties' supplemental pretrial order, filed November 4, 1988.[4]
Consolidation of the Ford case with the Johnson case does not present insurmountable problems of jury confusion. The Ford case involves physical injuries to a 64 year-old plaintiff. The Johnson case involves neurological and psychological injuries to a 31 year-old plaintiff. The presentation of two representative cases for trial of common issues in multidistrict litigation does not present problems which could not be addressed through a combination of appropriate jury instructions and verdict forms. In re Viatron Computer Systems Corp. Litigation, 86 F.R.D. 431, 433 (D.Mass. 1980) (joining two multidistricted cases for representative trial under federal securities law). The two cases involve relatively straightforward claims for negligence and loss of consortium. In our view, juries are able to determine factual issues involving several plaintiffs where a common accident is alleged to have caused various injuries. See Martin v. Bell Helicopter Co., 85 F.R.D. 654, 656 (D.Colo.1980) (empaneling two juries for consolidated trial of liability in an air crash case).
As a final consideration, we note that the trial of these two cases to the jury helps to address proof problems which are likely to arise during the punitive damage award phase of the trial should it be necessary. Without unduly complicating the litigation, the two damage cases represent a spectrum of the injuries alleged by plaintiffs in each of the 20 remaining cases. Under Texas law, the amount of a punitive damage award must bear some relation to the scope of the injuries attributed to the culpable conduct. See In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colorado, on November 15, 1987, Order MDL 751-16, 720 F.Supp. 1445 (D.D.C. Nov. 15, 1988). A consolidated exemplar trial will illuminate issues of punitive damages involved in the totality of this multidistrict litigation. We have considered the contentions of the parties. Each party has selected one case for trial. We consolidate these selected cases in the exemplar trial.
Accordingly, the case of Karen Svea Johnson, et al. v. Continental Airlines Corp., D.Colo. Case No. 88-F-664 (D.Idaho Case No. Civ. 88-1075), having been transferred to this court for all purposes pursuant to 28 U.S.C. § 1404(a), is consolidated with the case of Hugh F. Ford, et al. v. Continental Airlines Corp. et al., D.Colo. Case No. 87-F-1922, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure for trial of all issues exclusive of Texas Deceptive Trade Practices claims. This consolidated case serves as the exemplar trial for determination of liability and punitive damage issues in all cases consolidated in the District of Colorado.

IV.
Trial procedure for the exemplar case will proceed as follows.
Because of the anticipated length of the trial and its occurrence during the winter season, ten (10) jurors will be empaneled. See Martin v. Bell Helicopter Co., 85 F.R.D. 654, 657 (D.Colo.1980) (expanded panel avoids risk of prejudice in lengthy *1461 trial). From the venire, the Deputy Clerk will draw twenty (20) names. The court will voir dire the panel, excuse individuals for cause if appropriate, and replace excused jurors from the venire. Although the court will conduct the voir dire examination, counsel are directed to submit proposed voir dire questions for the court's consideration.
After completion of the voir dire, counsel will be permitted to exercise preemptory challenges on a written list containing the names of the 20 veniremen. The Deputy Clerk will present the list to plaintiffs' designated trial counsel. Plaintiffs will exercise the first challenge and the list will then be passed to defendants' designated trial counsel for exercise of the second challenge. The list will be exchanged accordingly until each side has exercised a total of five challenges. After exercise of the challenges, ten veniremen will be excused by the court. Of the ten veniremen remaining, four (4) will serve as alternate jurors. No public announcement will be made as to which side excused a juror or which jurors serve as alternates. The six (6) others will comprise the jury for Phase I, the consolidated trial of liability and compensatory damages in the Ford and Johnson cases, and Phase II, the consolidated trial of the amount of punitive damages, if any, to be awarded.
Phase I of the trial is schedule to commence on December 12, 1988. Trial will proceed through a schedule of elongated days and Saturdays, depending upon the residences of jurors. One attorney from each side will be designated to compile a joint running list of witnesses, designating the date and time the witness appeared and whether the witness appeared in person or through written or videotaped deposition. At the discretion of the court, the list will be submitted to the Phase I jury as necessary.
During the trial, each side will be permitted to provide an equal but limited number of key exhibits to the jury for review. These exhibits will remain in the courtroom. One complete set of trial exhibits will be submitted to the jury upon deliberation. These exhibits will not leave the jury room.
In an effort to expedite trial presentation, counsel are directed to explore techniques of presenting testimony through condensed narratives. See Manual for Complex Litigation, Second, § 22.332 (1985). For example, counsel for the party offering a witness may read a reasonable summary of that witness's testimony. The court will ask the witness if there are any deletions, additions or corrections. The opposing party may then cross-examine and the presenting party may propound rebuttal questions.
Trial procedures for the Phase II determination of a punitive damage award will be outlined by subsequent order, if necessary.

ORDER
The above captioned cases pending in this court pursuant to the conditional transfer order of the Judicial Panel on Multidistrict Litigation, In re Air Crash Disaster at Stapleton Int'l Airport, 683 F.Supp. 266 (J.P.M.L.1988), are hereby TRANSFERRED to the District of Colorado pursuant to 28 U.S.C. § 1404(a).
The case of Karen Svea Johnson, et al. v. Continental Airlines, et al., D.Colo. Case No. 88-F-664 (D.Idaho Case No. Civ. 88-1075), is hereby CONSOLIDATED for trial with the case of Hugh F. Ford, et al. v. Continental Airlines, et al., D.Colo. Case No. 87-F-1922, pursuant to Rule 42(a) of the Federal Rules of Civil Procedure.
In the other cases transferred to District of Colorado, issues of liability and punitive damages in each case are hereby BIFURCATED from issues of compensatory damages pursuant to Rule 42(b) of the Federal Rules of Civil Procedure. Liability and punitive damage issues for all cases will be CONSOLIDATED for resolution through the exemplar case.
The consolidated Ford/Johnson case is SET FOR TRIAL as the exemplar case on December 12, 1988 at 9:00 a.m.
The parties are DIRECTED to cooperate in complying with the procedure for trial preparation outlined in this order, in the *1462 supplemental pretrial order and at the November 2, 1988 Status Conference.
The parties are DIRECTED to submit the materials specified in Appendix A by the deadlines set forth therein.
This order may be modified by the court.

APPENDIX A

INSTRUCTIONS FOR TRIAL
Court filings which are to be submitted by noon on Monday, December 5, 1988:
1. Stipulations of counsel as to testimony or other matters.
2. Voir dire questions and proposed jury instructions with appropriate citations of authorities; verdict forms; and proposed special interrogatories.
3. Comprehensive trial briefs, including citations of authority, should be filed unless expressly not required by the Court. Special evidentiary questions and contentions should be included in the brief.
4. List of all witnesses and the order of testimony. Include resumes and biographies of witnesses to be qualified as experts; mark as exhibits.
5. Digest and summary of expert witnesses' testimony.
6. List of exhibits (see attached form). (NOTE: Counsel are directed to meet in advance of trial and review all exhibits to be tendered in evidence.) All exhibits are to be marked with court exhibit markers prior to trial; plaintiff's exhibits by number (1, 2, 3) and defendant's exhibits by letter (A, B, C).
7. List of direct testimony that is to be presented in deposition form. Counsel should familiarize themselves in the proper way to use deposition testimony for impeachment or cross-examination. See New Mexico Savings and Loan Assoc. v. USF & G, 454 F.2d 328 (10th Cir.1972).
8. Glossary of terms and nomenclature if the case involves medical, technical, or scientific issues.
Court filings to be submitted by Wednesday, December 7, 1988:[*]
1. Marked exhibits are to be submitted to the Courtroom Deputy Clerk in the courtroom, together with exhibit lists in triplicate. If the nature of the trial warrants, counsel should provide an extra set of exhibits for the Judge's use. Case numbers must appear on each exhibit.
2. Counsel should be prepared to state whether any direct testimony will be presented in deposition form. If so, depositions should be edited to exclude non-essential or repetitious testimony. A person to read the answers of deponent should be available, provided by counsel.
3. Counsel has the responsibility to provide any equipment such as projectors, extension cords, movie screens, etc., together with qualified operators.

ORDER MDL 751-18

MEMORANDUM OPINION AND ORDER ON MOTION TO CORRECT ORDER MDL 751-16
This matter comes before the court on defendants' Motion to Clarify and Correct Order MDL 751-16 [720 F.Supp. 1445], issued November 15, 1988. This multidistrict litigation involves claims arising out of the crash of Continental Airlines Flight 1713 on November 15, 1987 at Stapleton International Airport in Denver, Colorado. Order MDL 751-16 held that Texas law would apply to punitive damages claims because, applying choice of law principles, Texas had the most significant to the parties and the occurrence in relation to the issues raised in those claims.
Defendants Continental Airlines, Inc. and Texas Air Corporation ("Continental") challenge legal conclusions in the order and request certain corrections. The Plaintiffs' Steering Committee resists most of the requested corrections.
To the extent that Continental moves the court to reconsider conclusions of law, the motion is DENIED. Defendants have presented no authority or theory not considered in Order MDL 751-16. By this order, we reiterate our ruling that Texas *1463 law will control issues of punitive damages in this multidistrict litigation and amend Order MDL 751-16 as necessary.

I.
Choice of Law rules establish a two step analysis. The rules require the court to apply various principles to quantify the interests of the state where the crash occurred and then to apply those same principles to determine whether the contacts of certain other states are more significant. Rest. (Second) of Conflict of Laws §§ 146, 147. Continental contends that the language of our order proves we applied the wrong standard in determining which state's contacts were most significant. Regardless of whether we chose the verb "suggests," "provides," or "presumes" to describe the manner in which the American Law Institute committed choice of law principles to paper, the standard we applied was that embodied in the Restatement. See Order MDL 751-16 at p. 1452; see also Comments to Rest. (Second) of Conflict of Laws §§ 6, 146, 147, 175 (significance of a particular contact varies with the circumstances of each case); Order MDL 751-16 at p. 1450 n. 7.
Choice of law principles require the court to identify the state in which conduct at issue in particular claims occurred. See Order MDL 751-16 at p. 1449; Rest. (Second) of Conflict of Laws § 145(2)(b). To the extent that our analysis was complicated by factual disputes between the parties, we focused on the application of the law at issue to plaintiffs' allegations. See Order MDL 751-16 at p. 1450-51. The order identifies the several allegations to which the law regarding an award of punitive damages against a corporation would attach. Id. at p. 1450. Conduct at Continental's main dispatch center in Houston, Texas was one of several factors to which a theory of corporate liability would need to attach. Id. The burden is on plaintiffs at trial to prove that conduct caused the accident and to prove the character of that conduct according to the standards required by Texas law. Order MDL 751-16 establishes no facts which assist plaintiffs in meeting this burden. Whether plaintiffs prove their allegations remains a matter for determination by the jury. Id. at p. 1451. Order MDL 751-16 contains no expression or judgment of any facts, but refers only to pleadings and statements of counsel at hearing on the issue.
In Order MDL 751-16, we carefully considered Continental's interpretation of the choice of law authority regarding air crash cases. In its current motion, Continental reasserts three of those interpretations and effectively contends that in applying that authority, we improperly lowered the significance of Colorado's contacts with the punitive damage issues in this litigation.
The relationship between a passenger and an air carrier is centered either in the point of departure of point of return. Id. at p. 1451 (citing cases). The fact that individual claims have been consolidated in this litigation for certain purposes does not alter the fact that significantly different relationships exist between each claimant and the common defendants. Choice of law principles do not focus our analysis of the relationship on the point in time when all claimants travelling between various points happen to be located in the same place. Continental has submitted no authority to support such an assertion.
Similarly, in quantifying the significance of the various contacts in issue, we considered Continental's interpretations of cases discussing the "fortuitous" nature of the location of airplane crashes and the impact of such accidents on the communities in which they occur. On each of these issues, our interpretation of the authorities and choice of law principles differed from Continental's. Continental has presented no new authority to support either interpretation.
Order MDL 751-16 held that since Texas law controlled issues of punitive damages, certain requirements of Idaho law need not be addressed. See Order MDL 751-16 at p. 1454, n. 19. Continental disagrees with a footnote to that discussion which addressed the policies underlying a pleading rule included in Idaho's punitive damages statute. We decline Continental's request that we strike the footnote.

*1464 II.
Our research confirms Continental's current representation that in 1987 the Texas legislature enacted punitive damage limitations as part of a tort reform initiative. See Tex.Civ.Prac. & Rem.Code Ann. § 41.007 (Vernon Supp.1988). Previously, the parties as well as the court had determined that Texas imposed no monetary limitations on the amount of punitive damages a jury could award. See Brief of Defendants, Choice of Law Motion, at p. 18; Order MDL 751-16 at p. 1449. Order MDL 751-16 concluded, in part, that the policies underlying Colorado's tort reform statutes were in irreconcilable conflict with those of Texas. We have considered the contentions of Continental in regard to the impact of the new Texas statute on our analysis and conclude that the laws of Texas and Colorado remain in irreconcilable conflict. Our order addressed several substantive and procedural differences between the statutes. See Order MDL 751-16 at p. 1449. These differences have not been effected by Texas tort reform. The change in Texas law does not alter the fact that Colorado and Texas weigh the economic interests of defendants differently in determining the deterrent effect of punitive damage awards.
Furthermore, the procedural problems we noted in considering the application of Colorado's limitations to this consolidated action will not similarly frustrate the application of the new Texas statute. See Order MDL 751-16 at pp. 1453-54. The Texas statute provides a substantially broader range of amounts at which the jury could set the award it found to be appropriately deterrent. Under the stipulated trial plan embodied in Order MDL 751-17, the jury will reconvene, if necessary, during Phase II of the trial, to hear estimates of the total amount of actual monetary damages suffered by all plaintiffs. The jury will be instructed to relate the amount of its punitive damage award to that estimate. The likelihood that estimates of the parties will be so miscalculated as to place the award above the Texas quadruple damages limitation is minimal. The Texas statute does not unduly burden the trial plan established for this litigation.
The recent enactment of monetary standards for punitive damages in Texas does not alter the analysis or conclusions set out in Order MDL 751-16.

III.
Finally, defendants represent that both Continental Airlines, Inc. and Texas Air Corp., like many large American corporations, are incorporated under the laws of Delaware. Through an inadvertence we stated that defendants were incorporated in Texas. See Order MDL 751-16 at pp. 1451, 1452. Since our analysis focused on the concurrence of the site of the alleged conduct with the site of defendants' corporate headquarters, which defendants concede is Texas, the error has little effect on our conclusions.
We remain convinced that Texas bears the most significant relationship to the parties and occurrence in relation to issues of punitive damages in this litigation. Accordingly,
IT IS HEREBY ORDERED that MDL 751-16 is amended to incorporate the analysis contained in this Order; it is further
ORDERED that pages 1451 and 1452 of Order MDL 751-16 shall be corrected to state that Continental Airlines, Inc. and Texas Air Corp. are incorporated under the laws of the state of Delaware; it is further
ORDERED that all other requests to reconsider or correct contained in Defendants' Motion to Clarify and Correct Order MDL 751-16 are DENIED.
NOTES
[1] The status of claims under the Texas Deceptive Trade Practices Act will be established by subsequent order.
[2] On various occasions, the parties have indicated that they will be able to agree to a procedure for submitting evidence of the scope of damages incurred in the crash should a punitive damage award trial become necessary.
[3] Choice of law issues were resolved in an earlier order. In re Air Crash Disaster at Stapleton Int'l Airport, Denver, Colorado on November 15, 1987, Order MDL 751-16, 720 F.Supp. 1445 (D.D.C. Nov. 15, 1988). Because the parties agree that the laws of the interested states are practically identical with respect to liability for the common law torts alleged in this litigation, we apply the law of Colorado to these issues. See In re Air Crash Disaster at Washington, D.C., on January 13, 1982, 559 F.Supp. 333, 342 (D.D. C.1983).
[4] We note further that plaintiffs have responded to defendant's concern that many of the Johnson damage witnesses present complicated travel problems. Although most reside in Idaho, plaintiffs advised the court that the majority had expressed a willingness to travel to Colorado for trial. Plaintiffs further advised that every effort would be made to complete trial depositions for those who could not be in court and that witnesses would be stricken if a means for presenting their testimony through deposition could not be agreed upon. In response to defendants' objections, plaintiffs have filed statements in support of the proposed consolidated exemplar trial. Accordingly, the burden of presenting these additional damage witnesses falls upon plaintiffs and any risk of prejudice to the defendants will be resolved at trial.
[*] These final submissions may be amended.